DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of divorce that terminated the marriage of Gregory White, plaintiff below and appellee herein, and Karen White, defendant below and appellant herein. The following errors are assigned for review:
FIRST ASSIGNMENT OF ERROR:
"THE COURT ERRED WHEN IT FOUND THE PARTIES ABANDONED CONTRACT OF JUNE 2, 1995."
SECOND ASSIGNMENT OF ERROR:
"THE MAGISTRATE ERRED WHEN HE FOUND: `THE UNCONTROVERTED TESTIMONY IS THAT HE EVEN PROVIDED THE $10,000.00 FOR EACH OF THE DEFENDANT'S CHILDREN, BUT THIS MONEY WAS USED IN DEFENDANT'S VARIOUS BUSINESSES.'"
THIRD ASSIGNMENT OF ERROR:
"THE MAGISTRATE ERRED WHEN HE FAILED TO ALLOW INTO EVIDENCE THE DEPOSITION OF DR. SHAH."
FOURTH ASSIGNMENT OF ERROR:
"THE MAGISTRATE ERRED WHEN HE FAILED TO CONSIDER ALL FACTS FOR SPOUSAL SUPPORT AND WHEN HE FAILED TO AWARD KAREN WHITE SPOUSAL SUPPORT. AND, THE JUDGES [sic] ENTRY DOES NOT REVEAL HE GAVE CONSIDERATION TO THE FACTORS ENUMERATED IN SECTION 3105.18, SINCE HE DISPOSED OF THE ISSUE OF SPOUSAL SUPPORT WITH JUST SIX WORDS, TO WIT: `NO SPOUSAL SUPPORT SHALL BE ORDERED.'"
FIFTH ASSIGNMENT OF ERROR:
"THE MAGISTRATE ERRED WHEN HE ORDERED THE MARITAL HOME SOLD."
SIXTH ASSIGNMENT OF ERROR:
"THE MAGISTRATE ERRED WHEN HE MADE THE FINDINGS IN PARAGRAPH FOUR (4) OF THE SECOND PAGE OF HIS DECISION: `PLAINTIFF OBTAINED A JOB IN GALLIA COUNTY AT ROCKWELL INTERNATIONAL. HIS TESTIMONY IS THAT HE LOST $140-150,000.00 DURING THE MARRIAGE. DEFENDANT STATES THAT SHE LOST OVER $33,000.00 IN RETIREMENT SAVINGS AND SEVERANCE PAY. NONE OF THESE AMOUNTS WERE EVER DISPUTED.'"
SEVENTH ASSIGNMENT OF ERROR:
"THE MAGISTRATE ERRED IN ORDERING SHARED PARENTING WITH EACH PARTY HAVING THE CHILD FOR THREE WEEKS."
EIGHTH ASSIGNMENT OF ERROR:
"THE COURT ERRED WHEN IT DENIED KAREN WHITE [sic] REQUEST FOR EXPENSES [sic] MONEY FOR THE TRANSCRIPT AND ATTORNEY FEES."
NINTH ASSIGNMENT OF ERROR:
"THE COURT ERRED WHEN THE JUDGE AFFIRMED THE MAGISTRATE'S DECISION ON THE FOREGOING EIGHT SPECIFICATIONS OF ERROR."
 {¶ 2} The parties first met in 1984 when they worked for a civilian branch of the Navy in Indianapolis. Appellant and her previous husband were divorced in 1990 and appellee's wife died in 1994. They began dating shortly thereafter.
 {¶ 3} In 1995, as the Navy prepared to terminate some of its civilians jobs, the parties agreed that appellant and her children would live with appellee, and that appellant would clean for appellee and get his house in order so that it could be sold. To that end, on June 2, 1995 the parties entered into the following written agreement (the 1995 agreement):
"Karen will work full time for Greg in lieu of housing and utility expenses (equally shared would be approximately six hundred eighty dollars per month). Greg will give Karen the sum of two thousand dollars to start for her personal expenses and will pay any other expenses as they arise. In exchange Karen will provide the groceries and all expenses relating to the children (Steven and Daniel) except in cases of medical bills which Greg has agreed to pay.
When both parties agree that all work is finished and the house is sold, Greg will buy property suitable to run a daycare large enough to maintain an income comparable to the earnings to which she is accustomed. Greg will put the sum of five thousand dollars into an account for expenses in starting and maintaining the daycare. Greg will also start a trust fund in the sum of ten Thousand Dollars for each child."
 {¶ 4} Appellee sold his house in Indianapolis and, although they looked for other homes in that area for appellant to start her daycare business, they purchased a house in Gallia County where appellant's family lives.
 {¶ 5} The couple married on September 21, 1996, and one child was born as issue of that marriage (Jillian Nichole White d/o/b 6-29-97). Appellant did not open a daycare business but experimented with other ventures including crafts, antiques and vintage clothing. The record also indicates that the couple spent enormous amounts of money on these ventures and on their lifestyle in general.[1]
 {¶ 6} Appellee commenced the instant action on October 12, 1999 and sought a divorce on grounds of incompatibility, gross neglect of duty and extreme cruelty. He asked for, among other things, an equitable division of property and custody of their daughter. Appellant denied her husband's allegations and counterclaimed for divorce, on grounds of incompatibility, gross neglect of duty, and extreme cruelty. Appellant asked for custody of their daughter, child support and a "distributive award" of marital property.
 {¶ 7} After protracted discovery and ancillary proceedings on other issues, the matter came on for hearing before a magistrate over several days in November, 2000, January, 2001, and March, 2001. The parties agreed that they were incompatible and further agreed on the distribution of many items of tangible personal property. They disagreed whether appellee complied with the 1995 agreement and with the division of their remaining property, alimony, custody and support. After hearing testimony on these and other issues, the magistrate took the matter under advisement.
 {¶ 8} On September 12, 2001, the Magistrate filed an extensive report and recommended that the marriage be "dissolved" and that the parties share joint custody of their daughter. The magistrate further suggested a proposed distribution of marital property. On the last page of the magistrate's decision, the trial court endorsed an "interim order" and adopted that decision.
 {¶ 9} On September 19, 2001, appellant filed objections to the magistrate's decision. The trial court heard arguments from counsel on October 24, 2001, and agreed to review the file. The court issued an entry on October 30, 2001 and overruled most of the objections. The trial court sustained one objection, however, regarding the personal property division. As modified, the court noted that it adopted "the Magistrate's Decision as [its] final order."
 {¶ 10} Appellant filed an appeal from that judgment which we later dismissed for lack of jurisdiction because the trial court did not expressly set out the granted relief. See White v. White, Gallia App. No. 01CA12, 2002-Ohio-6304. On March 26, 2003, the trial court issued a nunc pro tunc judgment which, inter alia, granted a divorce on grounds incompatibility, ordered the sale of the marital residence (with net proceeds to be divided between the parties), declined to award appellant spousal support to appellant and awarded the parties joint custody of their daughter.[2] This appeal followed.
 I {¶ 11} We jointly consider appellant's first and second assignments of error which both discuss the 1995 agreement. At the outset we note that the trial court found the parties' agreement to be a valid and enforceable contract. The Magistrate concluded, however, that the agreement was largely abandoned and that, in any event, appellee did deposit $10,000 in trust for each of appellant's children from a previous marriage as the agreement required. Appellant argues that these findings are in error. We disagree.
 {¶ 12} Appellee testified that pursuant to the agreement, he placed a deposit on a house in Indianapolis for his wife to use for a daycare business. As to why that business did not come to fruition, appellee testified:
"Q. What happened to the daycare idea?
"A. Uh, the idea fell off.
Q. And why's that?
"A. Um, changed her mind.
Q. What did she change it to?
"A. Uh, it started off as crafting uh, and then it moved to several other ideas uh, antiques um, antique books and currently it is um, um, vintage clothing."
 {¶ 13} Insofar as the trust fund money for appellant's children by her first marriage, appellee testified that he transferred those sums into an account for them. He also explained what happened to those funds:
"Q. And what happened to that money?
"A. Uh, the money was spent.
Q. By whom?
"A. Well, as we draw, drew near to the bottom um, there was an occasion that Karen needed the money and uh, I told her that the only money that was left was the money, which at that time would only be 20, because we had already used the 5 for her business, was the money for uh, for the boys. And she said that that would be okay, that she could use the money now and pay the money back when her business was started."
 {¶ 14} In short, the evidence reveals that appellant spent the money deposited in trust for appellant's children in pursuit of business ventures. The Magistrate determined that the parties largely abandoned the 1995 agreement and that appellee, in any event, contributed the specified $10,000 to trust funds for each of appellant's children. Those factual findings will not be overturned on appeal as long as the findings are supported by competent, credible evidence. See Shemo v. MayfieldHts. (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; Vogel v. Wells
(1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154; C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. This is a highly deferential standard of review and even "some" evidence is sufficient to sustain the judgment and prevent a reversal. See Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989,992; Willman v. Cole, Adams App. No. 01CA725, 2002-Ohio-3596, ¶ 24;Simms v. Heskett (Sep. 18, 2000), Athens App. No. 00CA20. We believe that appellee's testimony sufficiently supported the magistrate's findings and we will not reverse those findings.
 {¶ 15} We readily agree with appellant, however, that contradictory evidence was adduced. We further agree that the Magistrate may have misspoken to the extent that he characterized the evidence as "uncontroverted." Nevertheless, the weight of the evidence and credibility of witnesses are issues that the trial court must determine as trier of fact. See Cole v. Complete Auto Transit, Inc. (1997),119 Ohio App.3d 771, 777-778, 696 N.E.2d 289; GTE Telephone Operationsv. J H Reinforcing Structural Erectors, Inc., Scioto App. No. 01CA2808, 2002-Ohio-2553, at ¶ 10; Reed v. Smith (Mar. 14, 2001), Pike App. No. 00CA650. The underlying rationale for this is that the trier of fact is better situated than an appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh and assess credibility. Myers v.Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, the trier if fact is free to believe all, part or none of the testimony of any witness who appears before it. Rogers v. Hill (1998),124 Ohio App.3d 468, 470, 706 N.E.2d 438; Stewart v. B.F. Goodrich Co.
(1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591; also see State v. Nichols
(1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80; State v. Harriston (1989),63 Ohio App.3d 58, 63, 577 N.E.2d 1144.
 {¶ 16} It is apparent that in the case sub judice the magistrate and the trial court afforded more weight to appellee's testimony than to appellant's testimony. We will not reverse that determination. For these reasons, we find no error in the judgment concerning appellee's compliance with the 1995 agreement. Accordingly, we hereby overrule appellant's first and second assignments of error.
 II {¶ 17} Appellant's third assignment of error concerns the magistrate's decision to exclude from evidence a deposition by Mahendra Shah, MD wherein she diagnosed appellant as suffering from Chronic Fatigue Syndrome. Appellee objects to the admission of the deposition into evidence because it was taken one day before the last day of the hearing and because his counsel was not present at the deposition to cross-examine Dr. Shah. The magistrate sustained the objection and ordered the deposition excluded from evidence. Appellant asserts that this action constitutes prejudicial error. We disagree.
 {¶ 18} Our analysis begins from the premise that trial courts enjoy considerable discretion under Evid.R. 611(A) with respect to the method and mode by which evidence is introduced at proceedings. See State v.Williams (May 18, 1998), Highland App. No. 97CA928; Smith v. Moore (May 15, 1998), Scioto App. No. 97CA2509; Hatfield v. Hatfield (Mar. 18, 1996), Ross App. No. 95CA2112. Similar discretion is also afforded with respect to the admission or the exclusion of relevant evidence. SeePeters v. Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299,587 N.E.2d 290; Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271,569 N.E.2d 1056; State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, at paragraph two of the syllabus. A decision on either point will not be reversed absent an abuse of discretion. We note that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. See Landisv. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140;Malone v. Courtyard by Marriott L.P. (1996), 74 Ohio St.3d 440, 448,659 N.E.2d 1242; Steiner v. Custer (1940), 137 Ohio St. 448, 31 N.E.2d 855
at paragraph two of the syllabus.
 {¶ 19} In the case at bar we find nothing arbitrary, unreasonable or unconscionable in the magistrate's decision to exclude Dr. Shah's deposition. To the contrary, we believe the decision to be very reasonable. This case was pending for a year and a half before Dr. Shah's deposition and the deposition occurred one day before the final day of the hearing. Appellant explained that the delay resulted from her difficulty in finding a physician to testify about Chronic Fatigue Syndrome. While that may be true, to admit testimony at that stage in the proceedings, without affording appellee an opportunity to cross-examine the physician and to obtain his own rebuttal expert, would be highly unfair. Thus, we find no error in the magistrate's decision and we hereby overrule appellant's third assignment of error.
 III {¶ 20} In her fourth assignment of error appellant argues that the magistrate failed to consider factors that weighed in favor of a spousal support award. We disagree.
 {¶ 21} It is well-settled that trial courts enjoy broad discretion in awarding spousal support. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64,67, 554 N.E.2d 83; Cherry v. Cherry (1981) 66 Ohio St.2d 348,421 N.E.2d 1293. A court's decision to award spousal support will not be reversed on appeal absent an abuse of discretion. Bechtol v. Bechtol
(1990), 49 Ohio St.3d 21, 24, 550 N.E.2d 178; Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131, 541 N.E.2d 597. In determining whether spousal support is appropriate and reasonable, a court must consider the following R.C. 3105.18(C)(1) factors:
"(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
"(b) The relative earning abilities of the parties;
"(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
"(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
"(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
"(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
"(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
"(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
"(l) The tax consequences, for each party, of an award of spousal support;
"(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
"(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 22} As the magistrate noted, little evidence was adduced concerning many of these factors. One important factor for the magistrate, however, was the fact that the marriage lasted only three years. Although appellant did not work during the course of the marriage, she earned $37,000 per annum prior to the 1995 agreement with appellee. Though appellant came to the final hearing in a wheelchair and testified she suffered from Chronic Fatigue Syndrome, the magistrate apparently afforded very little weight to her claim that she is incapable of working. This is well within the magistrate's province given that he is in a better position than the appellate court to observe the witness and to gauge credibility. Finally, as pointed out below, the lifestyle enjoyed by appellant and appellee during their marriage was achieved through spending large amounts of money from their retirement accounts and from funds obtained through appellant's first wife's estate. As the magistrate aptly noted below, this mode of living "certainly cannot be continued."
 {¶ 23} We believe that evidence in the record supports these findings. While that evidence could have been weighed differently, or different factors may have possibly played a stronger role for another fact finder, that is not the standard by which appellate courts review spousal support awards. Rather, the question is whether the evidence supports the factors underlying the trial court's decision. We believe that the evidence supports the trial court's conclusion.
 {¶ 24} Our next question is whether the magistrate, and thus the trial court, abused its discretion. We find no abuse of discretion.
 {¶ 25} In applying the abuse of discretion standard, appellate courts are admonished that they must not substitute their judgment for the trial court's judgment. See State ex rel. Duncan v. Chippewa Twp.Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181; Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301. Indeed, to show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoffv. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1; also see Bragg v. Hatfield, Vinton App. No. 02CA567, 2003-Ohio-1441, ¶ 22. In the instant case, we are not persuaded that anything of this sort exists in the trial court's decision not to award spousal support.
 {¶ 26} Appellant argues that in affirming the magistrate's recommendation, the trial court erred by not setting out the R.C. 3105.18
factors upon which it relied. We are not persuaded. Had the trial court heard this case for the first time, we would agree with appellant that it must set out those statutory factors upon which it relied. After all, that is a necessary step for an appellate court to review decisions on appeal. Here, however, the trial court considered the magistrate's report and the court expressly adopted the "well written" thorough findings and legal conclusions. In light of the fact that the magistrate included an extensive discussion of the relevant statutory factors, the trial court was not required to repeat those factors in its entry.
 {¶ 27} For these reasons, we hereby overrule appellant's fourth assignment of error.
 IV {¶ 28} Appellant argues in her fifth assignment of error that the trial court erred by ordering the marital home to be sold and the net proceeds divided between the parties. Specifically, appellant contends that the parties purchased the marital home as a place to operate her business. This argument, however, is a non-sequitur. As we noted previously, the magistrate found that the parties abandoned the 1995 agreement. The home was not purchased pursuant to that agreement, but as a residence for the parties to reside in. We find no error in ordering that this asset be sold and the net proceeds evenly divided. Thus, appellant's fifth assignment of error is without merit and is hereby overruled.
 V {¶ 29} Appellant's sixth assignment of error asserts that the magistrate's decision on page two, paragraph four, noted appellee's testimony that he "lost $140-150,000 during the marriage." Appellant claims the magistrate erred in making such a "finding." We disagree.
 {¶ 30} We note that the magistrate did not expressly find that appellee lost between $140,000 and $150,000 during the marriage. Rather,he simply reiterated that appellee testified to that effect. This is nothing more than a recitation of the evidence; it is not a factual finding. Moreover, it is a correct recitation of the evidence. The hearing transcript reveals the following colloquy:
"Q. What is your, compare your present net worth to what it was back when you were married?
"A. I am $150,000 poorer." (Emphasis added.)
 {¶ 31} Appellant counters by pointing to testimony elsewhere in the record where appellee stated he had a rough net worth of $300,000 when he and appellant were first married and, at the time of the hearing, had IRAs worth approximately $300,000. Thus, appellant concludes, no decrease in wealth occurred during the marriage and the magistrate should not have cited appellee's testimony. Again, we are not persuaded.
 {¶ 32} As we read the transcript, appellee testified that he and his ex-wife spent roughly $150,000 in liquid assets that he obtained from his first wife's estate. The increase in the net value of the IRAs, however, was because they "accumulated some value." In other words, his investments appreciated in value. We see no inconsistency in stating that appellant spent $150,000 in liquid assets during the marriage but, at the same time, had non-liquid assets appreciate in value. Furthermore, even if we assume that these two positions were somehow inconsistent, we again note that the trier of fact is free to believe all or part of the testimony of any witness who appears before it. See Rogers, supra at 470; Stewart, supra at 42. Appellee did in fact testify that he lost approximately $150,000 during the course of his marriage to appellant. Thus, we find no error in the magistrate's observation to that effect and we hereby overrule appellant's sixth assignment of error.
 VI {¶ 33} Appellant argues in her seventh assignment of error that the magistrate and trial court erred in ordering shared parenting. The gist of her argument is that the child must be placed in daycare during the time she resides with appellee (because he is employed) whereas appellant is not employed and the child could spend all day with her mother.
 {¶ 34} To begin, as the court noted in its October 30, 2001 judgment, the court ordered both parties to submit proposed custody agreements. Only appellee did so, however. Thus, appellant arguably waived her right to oppose the court's decision. Second, as in any decision concerning the allocation of parental rights and responsibilities, the court must be guided by child's "best interest." R.C. 3109.04 (B)(1). In determining a child's best interests, courts must consider all relevant factors including the following:
"(a) The wishes of the child's parents regarding the child's care;
"(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
"(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to the child's home, school, and community;
"(e) The mental and physical health of all persons involved in the situation;
"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
"(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
"(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." Id. at (F)(1).
 {¶ 35} In addition, when courts consider shared parenting options, courts must consider the following additional factors:
"(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
"(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
"(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
"(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
"(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." Id. at (F)(2).
 {¶ 36} Appellant does not couch her argument on appeal in terms of any of these factors. Indeed, appellant cites no authority in support of her argument. From our review of the transcript, however, we find sufficient evidence to support the trial court's conclusion. Both appellee and his brother testified about the strong relationship between appellee and the child.
 {¶ 37} We also point out that the record is replete with evidence on this issue that could have been construed against appellant. In particular, appellee and another witness testified about appellant's previous violent actions. Appellant even conceded that she struck her ex-husband
 {¶ 38} Also, a "tape" played at the hearing recorded Jillian making a "fuss" over visitation with her father. If taken at face value, this tape may provide a troubling portrayal of the child and her feelings toward appellee. If it was not found credible, however, it may provide an even more disturbing view of the lengths that appellant and her family will go in order to prevent appellee from having a relationship with his daughter.
 {¶ 39} In addition, Mary Robbins, appellant's mother, testified that appellee should only be allowed supervised visitation with his daughter because of inappropriate sexual comments that Jillian had been making. No evidence of any misconduct on appellee's part was intended, however. Further, the evidence presented by appellant on this issue troubled the magistrate who wrote:
"There was testimony concerning the custody of the child, who is four years of age. Although the mother's demeanor and actions do not seem tofoster a good atmosphere to raise a child, this Magistrate hopes that she can work on her parenting skills and reduce the animosity with the father in the future." (Emphasis added.)
 {¶ 40} When an allocation of parental rights and responsibilities is supported by the evidence, as it is here, then such an award must not be reversed by a reviewing court. Bechtol, supra at the syllabus; also see Davis v. Flickinger (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159. Reviewing courts should afford the utmost deference to a trial court decision regarding child custody matters. See, e.g., Miller v. Miller
(1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, absent an abuse of discretion, a reviewing court will not reverse a trial court's child custody decision. See, Bechtol, supra; Beaver v. Beaver (2001),143 Ohio App.3d 1, 8, 757 N.E.2d 41.
 {¶ 41} In the case sub judice, appellant has not established that the magistrate or the trial court abused its discretion in ordering shared parenting. Accordingly, we hereby overrule appellant's seventh assignment of error.
 VII {¶ 42} Appellant asserts in her eighth assignment of error that the trial court erred by not granting her expense money for appeal.[3] We disagree.
 {¶ 43} R.C. 3105.18(H) states:
"In divorce or legal separation proceedings, the court may awardreasonable attorney's fees to either party at any stage of theproceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." (Emphasis added.)
 {¶ 44} The decision whether to award fees lies within the trial court's discretion. Mays v. Mays (Dec. 13, 2001), Ross App. No. 01CA2585; Roddy v. Roddy (Jan. 11, 1999), Pike App. No. 97CA600. Here again, appellant has not persuaded us that an abuse of discretion has occurred.
 {¶ 45} The trial court awarded appellant various property items as part of the divorce settlement, including real estate under land contract to her brother from whom she is collecting payment, vintage clothing purchased for one of her many business ventures, and a right to one half of the net proceeds from sale of the marital residence. Although appellant appears to subsist solely on child support payments that she receives from appellee and from her children from a previous marriage, we find in the record no clear indication that she is incapable of earning additional money. Indeed, appellant was previously gainfully employed. We also agree with appellee's assertion that appellant grossly overstates the evidence of appellee's alleged "wealth." While the record reveals that appellee does have approximately $300,000 in IRA accounts, nothing establishes that those accounts are liquid (could be withdrawn at any time).
 {¶ 46} For these reasons, we find nothing arbitrary, unreasonable or unconscionable in the trial court's decision not to award appellant expense money to prosecute the appeal. Accordingly, we hereby overrule appellant's eighth assignment of error.
JUDGMENT AFFIRMED.
Harsha, J. Kline, J., Concur in Judgment Opinion.
[1] The evidence indicated that appellant cashed in and spent all her federal retirement monies and that appellee spent approximately $150,000 of funds he inherited from his first wife.
[2] The trial court ordered appellee to pay child support in the amount of $314.67 notwithstanding the shared custody order. The record indicates that appellant does not work because of "chronic fatigue syndrome" and, thus, can contribute no income to the support of their daughter.
[3] Appellant filed a motion with this Court on May 2, 2003 and asked for expense money. We denied her request on June 11, 2003. Appellant presents this Court with nothing new to persuade us that the trial court erred in coming to the same decision that we did.