[Cite as *Kumolu v. Kumolu*, 2025-Ohio-1669.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Yetunde I. Kumolu, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 24AP-236 |
| v. | : | (C.P.C. No. 22DR-2876) |
| Olugbo S. Kumolu, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 8, 2025

**On brief:** *Bradley Frick & Associates, Bradley N. Frick, Christine E. Strehl*, and *John J. Alastra*, for appellee. **Argued:** *Christine E. Strehl.*

**On brief:** *DeSanto & McNichols*, and *Debra J. DeSanto*, for appellant.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Olugbo S. Kumolu ("Husband"), appeals from the March 13, 2024 judgment and decree of divorce of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce and terminating his marriage to plaintiff-appellee, Yetunde I. Kumolu ("Wife"). For the reasons that follow, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 2} The parties were married on March 16, 2002 in Lagos, Nigeria, and the parties stipulated to same. The parties further stipulated that the de facto termination date of the marriage was May 12, 2023. At the time of the final hearing, Husband was 51 and

Wife was 50.

{¶ 3} Two children were born of the marriage: Mercy Kumolu, d.o.b. December 23, 2002, and G.K., d.o.b. September 15, 2010. At the time of the final hearing, Mercy was emancipated, attending college and living on campus, and G.K. was thirteen. G.K. has Down Syndrome of such severity that she is nonverbal and requires constant care and supervision. It is unlikely that G.K. will ever be able to live independently.

{¶ 4} In 2002, Wife won a lottery and obtained a Visa, which permitted her to work in the United States. In 2009, Wife sponsored Husband's immigration to the United States on the basis of their marital status as husband and wife. Between 2002 and 2009, Wife made two trips to visit Husband in Nigeria.

{¶ 5} Wife is employed as a Licensed Practical Nurse ("LPN") working for various private care companies. Wife worked both day and night shifts as an LPN throughout the marriage. At the time of the divorce proceedings, Wife was working primarily night shifts to accommodate G.K.'s school schedule. In 2023, Wife's total gross income was $54,226. This amount includes $18,000 in temporary annual spousal support and $36,222 earned from Wife's employment with the private care companies, Care Stream, Siblings Home, and Wexco Senior Services. (Jgmt. Entry/Decree of Divorce at 15.)

{¶ 6} Husband has a bachelor's degree in electrical and electronics engineering, which he obtained while still living in Nigeria. He also has certifications in IT, which were also obtained in Nigeria. Husband's primary employment is with Bread Financial, where he has been employed since 2015. In 2023, Husband's income from Bread Financial was $137,634.03. *Id.* In 2018, Husband became an Adjunct Professor at Columbus State Community College ("CSCC"). In 2023, Husband's income from CSCC was $16,240.54. *Id.*

{¶ 7} The parties stipulated to an equal division of all assets and liabilities, including retirement accounts. On March 13, 2024, the trial court issued its judgment entry/decree of divorce.

{¶ 8} Husband timely appealed to this court from the March 13, 2024 judgment entry/decree of divorce, and it is now before us.

## II. Assignments of Error

{¶ 9} Husband asserts the following six assignments of error for our review:

> I. The Lower Court abused its discretion in not Determining
>     A Later Date[] as the Commencement of the Date of

Marriage and indicating that Appellant Should Have Filed a Motion Earlier in the Case.

II.   The lower court abused its discretion by awarding spousal support to Appellee on a Permanent Basis.

III.  The Lower Court abused its discretion when it determined that Mercy Kumolu was not Credible.

IV.   The Lower Court erred in Finding that Appellant was less than Credible in light of Appellee's Testimony.

V.    The lower court erred in Determining that [G.K.] should be designated a Castle Child at this Point in Time.

VI.   The lower court erred in Not Awarding Tax Exemption for the Minor Child.

(Sic passim.)

### III.  Discussion

### A.  Standard of Review

{¶ 10} "When reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard is used." *Taylor v. Taylor*, 2018-Ohio-2530, ¶ 5 (10th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). This standard has been applied in cases concerning orders relating to alimony; the division of martial property; child custody; and child support. (Internal citations omitted.) *Id.*

{¶ 11} A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term "abuse of discretion," " 'commonly employed to justify an interference by a higher court with the exercise of discretionary power by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis deleted.) *Id.*, quoting *Black's Law Dictionary* (2d Ed. 1910). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27. Thus, " 'a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment.' " *Taylor* at ¶ 5, quoting *Booth* at 144. This principle will guide our review of Husband's assignments of error, to which we now turn.

**B. Assignment of Error One**

{¶ 12} In his first assignment of error, Husband asserts the trial court erred in not finding a later date as the commencement of the date of marriage and further indicating that he should have filed a motion earlier in the case. This assignment of error is readily dispensed with.

{¶ 13} The record unequivocally evinces that the parties stipulated to the commencement date of the marriage as being March 16, 2002. (Feb. 22, 2024 Stips. at 1.) This clear stipulation was entered into by the parties only days before the final hearing commenced. This fact alone is enough to summarily overrule Husband's assignment of error on this point.

{¶ 14} Moreover, the trial court was entirely correct in pointing out in its judgment entry/decree of divorce that if Husband had wanted to contest the commencement date of the parties' marriage, he had already had ample opportunity to file a motion, pursuant to R.C. 3105.171(A)(2)(b), requesting that a commencement date of marriage later than March 16, 2002 was warranted in this case. Instead, Husband waited until the final hearing to raise the issue. The trial court did not abuse its discretion in rejecting Husband's last-minute tactic, particularly when the parties had already stipulated to the commencement date of the marriage.

{¶ 15} Accordingly, based on the foregoing, Husband's first assignment of error is overruled.

**C. Assignment of Error Two**

{¶ 16} In his second assignment of error, Husband asserts the trial court erred in awarding spousal support to Wife on a permanent basis. We find no merit in this assignment of error.

{¶ 17} In a divorce proceeding, a trial court may award "reasonable spousal support to either party." R.C. 3105.18(B). A trial court has broad discretion to determine the appropriate amount of spousal support based on the particular facts and circumstances of each case. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990), *superseded by statute on separate grounds*. A reviewing court cannot substitute its judgment for that of the trial court, absent a showing of an abuse of discretion. *Id.*

{¶ 18} R.C. 3105.18(C)(1) governs the trial court's discretion and requires the trial

court to consider certain factors in determining whether spousal support is reasonable and appropriate. Similarly, R.C. 3105.18(C)(1) guides the trial court in determining the nature, amount, terms of payment, and duration of any such award of spousal support. In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, terms of payment, and the duration of spousal support, the court must consider all the following factors:

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (g) The standard of living of the parties established during the marriage;
>
> (h) The relative extent of education of the parties;
>
> (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
>
> (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
>
> (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
>
> (l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1)(a) through (n). " 'The trial court must consider all of these factors; it may not base its decision regarding spousal support on any one factor in isolation.' " *McCall v. Kranz,* 2016-Ohio-214, ¶ 30 (10th Dist.), quoting *Gallo v. Gallo,* 2015-Ohio-982, ¶ 49 (10th Dist.), citing *Kaechele v. Kaechele,* 35 Ohio St.3d 93, 96 (1988).

**{¶ 19}** Here, the trial court analyzed all the factors set forth in R.C. 3105.18(C)(1) and, based on that analysis, ordered Husband to pay $1,500 per month in permanent, modifiable spousal support to Wife. (Jgmt. Entry/Decree of Divorce at 15.) Against Husband's protestations to the contrary, for the following reasons, the trial court did not abuse its discretion in doing so.

**{¶ 20}** First, we have already determined the trial court did not err in finding the commencement date of the marriage to be March 16, 2002. Therefore, neither did the trial court err in finding that the length of the parties' marriage was twenty-one years—a length considered to be a long-term marriage. As such, Husband's argument regarding an improper date of commencement being applied to the court's analysis of this issue is irrelevant.

**{¶ 21}** Furthermore, Husband's argument that the trial court's findings regarding the parties' respective probable future incomes are not supported by the evidence is wholly unavailing. The evidence overwhelmingly supports the trial court's conclusion that, based on the parties' current occupations and income earnings, it is more likely than not that Husband will always earn significantly more than Wife.

**{¶ 22}** Finally, regarding Husband's concerns about continuing having to pay spousal support upon his own retirement, we observe that the trial court specifically made the award of spousal support modifiable and retained jurisdiction on the matter. Thus, Husband is free to file a motion to modify the spousal support award at any time in the future, including upon his retirement.

**{¶ 23}** Accordingly, based on the foregoing, Husband's second assignment of error is overruled.

**D. Assignments of Error Three and Four**

{¶ 24} In his third and fourth assignments of error, Husband asserts the trial court erred in finding the testimony of Mercy Kumolu not credible and further erred in finding Husband's own testimony not credible, respectively. Neither assignment of error has merit.

{¶ 25} It is well-settled that "[t]he weight of the evidence and credibility of witnesses are issues left to the sound discretion of the trial court." *Kramer v. Kramer*, 2019-Ohio-4865, ¶ 28 (10th Dist.), citing *Galloway v. Khan*, 2006-Ohio-6637, ¶ 29 (10th Dist.), citing *White v. White*, 2003-Ohio-6316, ¶ 15 (4th Dist.). The underlying rationale for this tenet of law "is that the trier of fact is better situated than an appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh and assess credibility." *Id.*, citing *Galloway* at ¶ 29, citing *White* at ¶ 15. "Accordingly, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it." *Id.*, citing *Galloway* at ¶ 29, citing *White* at ¶ 15.

{¶ 26} Regarding Mercy's testimony, in its judgment entry/decree of divorce, the trial court set forth in detail the reasons why it found the credibility of Mercy highly questionable. (Jgmt. Entry/Decree of Divorce at 4-5.) These included the following. First, both Husband and Wife told the guardian ad litem ("GAL") they preferred that Mercy not be interviewed as part of the GAL's investigation in an effort to prevent putting Mercy between the two parties, yet Husband called Mercy as a witness in his case-in-chief anyway.[1] The trial court observed that "[d]espite the parties' expressed concerns regarding putting Mercy in the middle of their divorce, Father's actions put her quite literally in the middle of them during the trial." *Id.* at 5.

{¶ 27} Second, as set forth by the trial court, the evidence and testimony showed that Husband paid for Mercy's college tuition, "most if not all her living expenses, and provides her with a credit card." *Id.* at 4. The trial court found this financial situation "gives rise to, at the very least, an implicit pressure in favor of Father [and] [t]he Court has doubts such pressures remained implicit." *Id.* at 5.

---

[1] Husband attempted to explain this change of heart by stating that he wished to permit Mercy to refute certain findings made by the GAL in her report. Yet, as the trial court pointed out, it was entirely improper for Husband to have shown Mercy a copy of the GAL's report in the first instance. (Jgmt. Entry/Decree of Divorce at 4, 27-29.) Indeed, the trial court issued an order "for [Husband] and Counsel for [Husband] to appear and show cause why they should not be held in contempt for the unauthorized dissemination of the Guardian *ad Litem*'s Report." *Id.* at 29; *see also* Mar. 13, 2024 Order to Show Cause and Summons.

{¶ 28} Finally, the trial court observed that "Mercy's demeanor and overall presence on the stand evidenced enormous discomfort. Her voice inflections during her testimony and the answers themselves also give the Court pause. During the course of her testimony, Mercy did not appear to look at her Mother a single time." *Id*. at 4. Based on all the foregoing, the trial court did not abuse its discretion or otherwise err in finding the testimony of Mercy Kumolu as not credible.

{¶ 29} Similarly, the trial court clearly stated in its judgment entry/decree of divorce the multiple and specific instances of testimony where the court found the testimony of Wife to be more persuasive than that of Husband's. These included the following. First, the trial court found testimony by Wife regarding instances of violence within the home wherein Husband was the aggressor to be credible, and Husband's denials of the same to be "unconvincing." (Jgmt. Entry/Decree of Divorce at 7.)

{¶ 30} Second, the trial court explained it found Husband's testimony regarding how he would handle caring for G.K. when she was not attending school to be "unpersuasive." *Id*. at 9. The trial court further explained that, coupled with the GAL's testimony on the same subject, Wife's work schedule was "more conducive to [G.K.]'s best interests" and her ability to care for G.K. going forward the same as she had always cared for G.K. had already been proven. *Id*.

{¶ 31} Third, the trial court explained in detail why it found Husband's testimony regarding his "plans and ideas about how to ensure he is able to address [G.K.]'s care" questionable. (Jgmt. Entry/Decree of Divorce at 11.) The trial court's explanation included pointing to a specific example concerning an email from G.K's speech-language pathologist therapist, which seemed to indicate that Husband had first met the therapist in October 2023, despite Husband testifying that he had been involved in G.K.'s therapy appointments all along. *Id*.

{¶ 32} Finally, the trial court expressed concerns about Husband's testimony regarding his "attitude toward [G.K.]'s care and Mother's near-sole responsibility for said care." *Id*. at 13. Specifically, the trial court found unpersuasive Husband's efforts to refute the testimony of the GAL that he had expressed surprise when he learned that G.K. was not potty-trained, indicating that he was not even aware of that fact. The trial court also was concerned regarding Husband's testimony regarding G.K.'s future abilities, including the

ability to secure employment. The trial court specifically found that, at best, Husband's testimony showed that Wife had a "far better grasp of the reality of [G.K.]'s condition" than he did. *Id.*

{¶ 33} Based on the foregoing, we cannot say the trial court abused its discretion or otherwise erred in finding these certain specific instances of the testimony of Husband to be not credible. Accordingly, Husband's third and fourth assignments of error are overruled.

### E. Assignment of Error Five

{¶ 34} In his fifth assignment of error, Husband asserts the trial court erred in designating G.K. a *Castle* child. We disagree.

{¶ 35} Domestic relations courts have "jurisdiction appropriate to the determination of all domestic relations matters." R.C. 3105.011. R.C. 3109.04(A) provides that, in a divorce proceeding, the domestic relations court "shall allocate the parental rights and responsibilities for the care of the minor children of the marriage." Under R.C. 3109.05(A)(1), "the court may order either or both parents to support or help support their children."

{¶ 36} The Supreme Court of Ohio has held that "[t]he common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Castle v. Castle*, 15 Ohio St.3d 279 (1984), paragraph one of the syllabus. In 2000, the Ohio General Assembly enacted R.C. 3119.86, which provides in pertinent part that "[n]otwithstanding section 3109.01 of the Revised Code . . . [t]he duty of support to a child imposed pursuant to a court child support order shall continue beyond the child's eighteenth birthday" only in certain circumstances, including where "[t]he child is mentally or physically disabled and is incapable of supporting or maintaining himself or herself." R.C. 3119.86(A)(1)(a). R.C. 3109.01 defines what is commonly referred to as the "age of majority," and states that "[a]ll persons of the age of eighteen years or more, who are under no legal disability, . . . are of full age for all purposes." Thus, R.C. 3119.86(A)(1)(a) has effectively codified the *Castle*

decision. *Geygan v. Geygan*, 2012-Ohio-1965, ¶ 10 (10th Dist.), citing *Yost v. Yost*, 2003-Ohio-3754, ¶ 10 (4th Dist.).

{¶ 37} In this case, the GAL testified that G.K. has severe Down Syndrome and that her medical doctor indicated that it was not possible for G.K. to be employed one day. The GAL further testified that Husband was not "realistic about how or what may be for [G.K.] one day." (Tr. Vol. IV at 532.) When questioned by counsel for Husband, "[i]s it a bad thing that [Husband] would hope that she can get to that level?", the GAL testified "[i]t's not bad; it's just not realistic." *Id.* Husband himself acknowledged in his testimony that G.K. has severe Down Syndrome and that "barring a miracle" she will always be disabled and dependent on someone. (Tr. Vol. III at 347.)

{¶ 38} Based on the evidence presented in this case, the trial court did not abuse its discretion when it found that "[G.K.] fits the very type of child the statutory, common law, and case law precedents envisioned when authorizing the extension of support beyond a child's 18th birthday." (Jgmt. Entry/Decree of Divorce at 23.) Nor did the trial court abuse its discretion when it found it "appropriate to require support to continue beyond [G.K.]'s eighteenth birthday." *Id.*

{¶ 39} Accordingly, Husband's fifth assignment of error is overruled.

### F. Assignment of Error Six

{¶ 40} In Husband's sixth assignment of error, Husband asserts the trial court failed to provide guidance as to the tax exemption status for the minor child, G.K. This assignment of error is completely meritless.

{¶ 41} In its judgment entry/decree of divorce, the trial court stated that it found Wife's proposed shared parenting plan ("SPP"), filed on December 20, 2023, to be in the best interest of G.K., subject to certain objections of the trial court. (Jgmt. Entry/Decree of Divorce at 14.) Wife's SPP awarded Wife the entitlement to claim G.K. as a dependent child for tax purposes. (Dec. 20, 2023 Proposed Shared Parenting Plan.) The trial court's objections to Wife's SPP relate to either parenting time or communication between Husband and Wife concerning G.K. utilizing the "Our Family Wizard" application; none pertain to the proposed award to Wife the right to claim G.K. as a dependent. *Id.* at 14-15.

{¶ 42} On March 28, 2024, Wife submitted a revised SPP which addresses the court's objections set forth in the judgment entry/decree of divorce. Ultimately, the trial

court issued a shared parenting decree on April 23, 2024, which adopted Wife's revised SPP and left intact the statement in Wife's originally submitted SPP that "Mother shall be entitled to claim the child each year as a dependency exemption and for the child tax credit for income tax purposes." (Mar. 28, 2024 Proposed Shared Parenting Plan at 13.) Therefore, the trial court did not fail to provide guidance as to the tax exemption status for G.K.

{¶ 43} Accordingly, Husband's sixth assignment of error is overruled.

## IV. Disposition

{¶ 44} Having overruled Husband's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

———————————