[Cite as *C.T.F. v. A.B.M.*, 2025-Ohio-1036.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

C.T.F.,                                           :

      Plaintiff-Appellee,              :

                                               No. 24AP-440
v.                                                :        (C.P.C. No. 23JU-2170)

A.B.M.,                                           :        (REGULAR CALENDAR)

      Defendant-Appellant.            :

---

D E C I S I O N

Rendered on March 25, 2025

---

**On brief:** *Cooke Demers, LLC, John P. Johnson, II*, for appellee. **Argued:** *John P. Johnson, II*.

**On brief:** *A.B.M*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Division

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, A.B.M. ("Mother") appeals from the June 17, 2024 decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Division, approving and adopting the magistrate's decision of December 15, 2023, and overruling appellant's objections thereto and awarding legal custody of the minor child at issue in this matter to plaintiff-appellee, C.T.F. ("Father"). For the following reasons, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} This court's prior opinion in *C.T.F. v. A.B.M.*, 2024-Ohio-1998, (10th Dist.) ("*C.T.F. v. A.B.M. I*") aptly sets forth the factual and procedural background of this matter, which we reiterate, *verbatim*, as follows.

> The parties are the biological parents of minor child, A.W.M-F. On February 23, 2023, father filed a complaint to establish parentage and custody of the minor child. Father made several attempts to serve mother with his complaint, but mother refused to provide father and father's counsel with her location so that she could be served.
>
> On May 4, 2023, father appeared for an ex parte hearing before the magistrate on his motion for emergency custody. Neither mother nor mother's counsel was present due to failure of service. At that hearing, father provided testimony on issues related to the best interest of the minor child, including that mother had absconded with A.W.M-F.—who was, at that time, almost six months old—on January 30, 2023. (*See* Sept. 22, 2023 Contempt Order at ¶ 5.) Father also testified he had been unable to locate mother and the minor child since that date. (See id.) Of note, a transcript of this hearing has not been prepared and filed, and thus is not in the record before us.
>
> Based on the testimony provided by father at the May 4, 2023 ex parte hearing, the magistrate found it was in the best interest of the parties' minor child that father be designated as the temporary residential parent and legal custodian of A.W.M-F. pending a hearing on father's complaint, pursuant to Juv.R. 13, on May 4, 2023 (hereinafter the "temporary order"). (*See* Sept. 22, 2023 Contempt Order at ¶ 5.) Mother was granted parenting "as the parties can agree" in that same temporary order.
>
> Notice of the magistrate's temporary order, as well as notice of the next hearing date of July 17, 2023, was sent by the court to mother's last known address, pursuant to Juv.R. 13(E). Father perfected service by publication upon mother on June 8, 2023. Mother learned of the juvenile court proceedings in mid-June 2023 after she was criminally charged with interference with custody, in violation of R.C. 2919.23(A)(1), in Franklin County Municipal Court case No. 2023 CRB 9662 and retained counsel. (*See* Sept. 22, 2023 Contempt Order at ¶ 7-8; June 22, 2023 Notice of Appearance.) Accordingly, mother's counsel

entered an appearance in the juvenile case on June 22, 2023 and filed an emergency custody motion on June 27, 2023.

On July 17, 2023, both parties and their counsel appeared for a two-day hearing on mother's emergency custody motion. Notwithstanding the magistrate's May 4, 2023 temporary order designating father as the temporary residential parent and legal custodian [of] the child, mother did not bring A.W.M-F. to that hearing and refused to disclose his whereabouts. (*See* Sept. 22, 2023 Contempt Order at ¶ 10-11.) Nor did she provide any evidence to verify the minor child—then 11 months old— was still alive. (*See* Aug. 31, 2023 Tr. at 7; Sept. 22, 2023 Contempt Order at ¶ 10.)

During the second day of proceedings, mother learned the magistrate intended to deny her motion and require her to return A.W.M-F. to father later that day. (*See* Sept. 22, 2023 Contempt Order at ¶ 12; July 25, 2023 Mot. to Withdraw at ¶ 6.) During a recess—and prior to the conclusion of that proceeding—mother went into the courthouse restroom, threw away the clothes she had worn to court, changed into different clothing, put on a wig and face mask, and left the courthouse. (See Sept. 22, 2023 Contempt Order at ¶ 12; Aug. 31, 2023 Tr. at 9-10.) Mother refused to return to court on the advice of her counsel, who consequently withdrew from representation shortly thereafter. (*See* July 25, 2023 Mot. to Withdraw at ¶ 6; Sept. 22, 2023 Contempt Order at ¶ 12.)

A week before the July 17, 2023 hearing, father had filed a contempt motion, citing mother's continued failure to comply with the magistrate's May 4, 2023 temporary orders. (*See* July 10, 2023 Mot. for Contempt.) After mother absconded from the July 17th hearing in disguise, father filed another contempt motion and requested an immediate conference with the court on July 19, 2023. (*See* July 25, 2023 Mot. to Withdraw at ¶ 6.) However, that contempt motion was not docketed in the juvenile court, and thus, is not in the record before us. In any event, a hearing on father's contempt motions and underlying complaint was scheduled for August 14, 2023. (*See* July 19, 2023 Mag.'s Order.) Mother was ordered to bring the minor child to that hearing if he had not been returned to father by that date. (*See* July 19, 2023 Mag.'s Order.)

Although mother's newly retained counsel appeared at the August 14, 2023 hearing, mother did not show and failed to

produce the child as ordered. (Aug. 16, 2023 Mag.'s Order. *See also* Sept. 22, 2023 Contempt Order at ¶ 17.) And, the whereabouts of mother and the minor child remained unknown. (See Aug. 16, 2023 Mag.'s Order.) The magistrate ordered mother to relinquish the minor child to father forthwith and to immediately notify the clerk of the address where she and the minor child were residing. (*See* Aug. 16, 2023 Mag.'s Order.) A hearing on father's complaint, father's contempt motions, and other remaining matters was scheduled for September 14, 2023.

In the meantime, on August 18, 2023, mother moved for leave to untimely file an objection to the magistrate's May 4, 2023 temporary order, citing non-service of father's complaint and notice of the May 4, 2023 hearing.

Additionally, on August 31, 2023, counsel for both parties and father appeared for a hearing on father's petition for a warrant to take physical custody of the minor child under R.C. 3127.41. (*See* Sept. 22, 2023 Contempt Order at ¶ 18.) On appeal, father acknowledges his petition was presented to the juvenile court—but not filed with the clerk—and stipulates he failed to file a verified application in support thereof, as required by R.C. 3127.41 and 3127.38. (Brief of Appellee at 12, 18.) Nonetheless, following father's testimony describing the extensive efforts he had taken to locate the minor child and mother and in light of mother's continued refusal to return the child or even produce any proof of life evidence, the juvenile court issued the requested warrant to take physical possession. (*See* Sept. 22, 2023 Contempt Order at ¶ 18.) This August 31, 2023 order is the subject of mother's first assignment of error.

Notwithstanding mother's awareness of the magistrate's May 4, 2023 temporary order by at least mid-June, the juvenile court granted mother leave to file an objection to the magistrate's order outside of time on September 7, 2023. In the form objection attached to mother's August 18, 2023 motion for leave, mother represented that "[a] transcript of the trial is contemporaneously being requested" and also sought leave from the juvenile court to supplement her objection within 30 days after that transcript was filed. (Aug. 18, 2023 Obj. to the Mag.'s Order.

On September 7, 2023, the juvenile court scheduled a hearing on mother's objection for September 14, 2023, ordered mother

to appear with the minor child, and notified the parties of potential consequences for failing to appear at that hearing. (Sept. 7, 2023 Decision and Jgmt. Entry. *See* also Sept. 22, 2023 Contempt Order at ¶ 19.) In that order, the juvenile court did not address mother's request for leave to supplement her objection after the transcript of the May 4, 2023 ex parte hearing was filed. In any event, we note that, contrary to mother's representation in her August 18, 2023 form objection, no request for the May 4, 2023 transcript—much less, the transcript itself—was ever filed in the juvenile case below. (*See* Aug. 18, 2023 Obj. to Mag.'s Order.) As such, we find no merit to mother's repeated contention that she "contemporaneously" requested a transcript of the May 4, 2023 hearing when she filed her form objection to the magistrate's temporary order on August 18, 2023. (*See* Brief of Appellant at 9; Sept. 14, 2023 Tr. at 11-12.)

In fact, pleadings filed by mother's counsel in the case below ***after*** this appeal was initiated actually undermine mother's representation that the transcript of the May 4, 2023 hearing was requested. (*See* Aug. 18, 2023 Obj. to Mag.'s Order.) While this appeal was pending, the matter proceeded to trial on father's complaint and motion for contempt on November 15, 2023 in the juvenile court. After a final disposition on custody was rendered on December 15, 2023 by the juvenile magistrate, mother filed the same form objection stating "[a] transcript of the [November 15, 2023] trial is contemporaneously being requested" on December 28, 2023. *Id.* But, unlike when she filed her form objection in August, a request for the transcript ***was*** actually filed contemporaneous[ly] with mother's December objection.

In any event, counsel for both parties and father appeared for the scheduled September 14, 2023 hearing on mother's objection to the magistrate's May 4, 2023 temporary order. (*See* Sept. 22, 2023 Contempt Order at ¶ 20.) Although mother and her counsel received notice of the hearing and the juvenile court's mandate that mother appear with the minor child, mother did not appear in court and refused to appear via video conferencing. (*See* Sept. 14, 2023 Trial Court Tr. at 2-3, 6, 9-13; Sept. 22, 2023 Contempt Order at ¶ 21.) For this reason, at the September 14th hearing, the juvenile court pronounced from the bench its finding of contempt against mother and its decision to dismiss mother's objection for failure to appear and prosecute at the hearing and because she was in contempt of

the September 7, 2023 order requiring her presence in court with the minor child. (*See* Sept. 14, 2023 Trial Court Tr. at 8, 13-14.) The juvenile court memorialized its ruling dismissing mother's objection to the magistrate's May 4, 2023 temporary order in its September 22, 2023 dismissal entry, which is the subject of mother's second assignment of error. The juvenile court also separately entered a contempt order against mother that same day.

Mother timely appealed from the juvenile court's August 31, 2023 order issuing the warrant to take physical custody of the minor child and the September 22, 2023 entry dismissing her objection to the magistrate's May 4, 2023 temporary order.

(Emphasis in original.) *C.T.F. v. A.B.M. I* at ¶ 3-17.

{¶ 3} In *C.T.F. v. A.B.M. I*, we ultimately determined that the trial court erred in granting Father's request for a warrant to take physical custody of the minor child pursuant to R.C. 3127.41. *See C.T.F. v. A.B.M. I* at ¶ 18-21. Accordingly, we sustained Mother's first assignment of error in that case. *Id.* at ¶ 21. We found, however, that Mother's appeal from the juvenile court's September 22, 2023 entry dismissing her August 18, 2023 objection to the magistrate's May 4, 2023 ex parte emergency temporary order granting Father legal custody of the minor child pending a hearing on Father's parentage and child custody complaint was not a final appealable order. *Id.* at ¶ 30-31. We further found that not only was the September 22, 2023 entry not a final appealable order, but it had become superseded, and therefore moot, by virtue of the trial court's December 15, 2023 issuance of the magistrate's decision adjudicating custody of the minor child. *Id.* at ¶ 32-36. We thus remanded the matter to the trial court.

{¶ 4} Meanwhile, during the pendency of our decision being issued in *C.T.F. v. A.B.M. I*, proceedings in the trial court continued. A final custody hearing took place on November 15, 2023. (June 17, 2024 Decision & Jgmt. Entry at 5.) On December 15, 2023, the magistrate issued her decision granting sole custody of the parties' minor child to Father, with parenting time for Mother to be determined. (Dec. 15, 2023 Mag.'s Decision.)

{¶ 5} On December 28, 2023, Mother filed her objections, followed by supplemental objections filed, with leave of court, on March 29, 2024 and April 30, 2024.

**{¶ 6}** On May 13 and 21, 2024 the trial court held a hearing on the objections. Notably, Mother failed to appear for the second day of the hearing, despite having requested a continuance along with an assurance that she would appear in person. (June 17, 2024 Decision & Jgmt. Entry at 1.)

**{¶ 7}** On June 17, 2024, the trial court issued its decision and judgment entry adopting the December 15, 2023 magistrate's decision and overruling Mother's objections thereto.

**{¶ 8}** Mother timely appealed to this court from the June 17, 2024 decision and judgment entry and it is now before us.

## II. Assignments of Error

**{¶ 9}** Mother asserts the following five assignments of error for our review:

> I. The Trial Court Erred By Not Following The Court's Rules And Procedure.
>
> II. The Trial Court Erred By Improperly Relying On The Appellee's Mental Health Diagnosis of The Appellant.
>
> III. The Trial Court Erred By Failing to Acknowledge Domestic Violence and Abuse.
>
> IV. The Appellant Asserts She Received Ineffective Assistance of Counsel.
>
> V. The Appellant Contends The Cumulative Effect of The Aforementioned Errors Deprived Her of Due Process And A Fair Trial.

(Sic passim.)

## III. Discussion

### A. Standard of Review

**{¶ 10}** "When reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard is used." *Taylor v. Taylor*, 2018-Ohio-2530, ¶ 5 (10th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). This standard has been applied in cases concerning orders relating to alimony; the division of martial property; child custody; and child support. (Internal citations omitted.) *Id*.

{¶ 11} A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term abuse of discretion, " 'commonly employed to justify an interference by a higher court with *the exercise of discretionary power* by a lower court, implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.' " (Emphasis in original.) *Id.*, quoting Black's Law Dictionary 11 (2d Ed.1910). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27. Thus, "a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." *Taylor* at ¶ 5, quoting *Booth* at 144. This principle will guide our review of Mother's assignments of error, to which we now turn.

### B. Assignment of Error One

{¶ 12} In her first assignment of error, Mother asserts the trial court erred by not following the court's own rules and procedure. This assignment of error is entirely bereft of merit.

{¶ 13} As an initial matter, we observe that the arguments made in support of this assignment of error are difficult to parse as being unclear, indecipherable, and/or incoherent. Nevertheless, based on our construction of the assignment of error as stated and the arguments made thereunder, we have identified three apparent issues of contention asserted by Mother. We address each of these areas below.

{¶ 14} First, Mother continues to insist that the May 4, 2023 temporary magistrate's order granting Father sole legal custody of the minor child was improperly issued and further, that the trial court erred in its September 22, 2023 dismissal of appellant's objection to the magistrate's temporary order. This court has previously determined that the issue of whether the trial court erred in its September 22, 2023 dismissal of Mother's objection to the magistrate's temporary order granting Father sole legal custody of the minor child has become moot by virtue of the trial court's final decision on custody rendered on December 15, 2023. *C.T.F. v. A.B.M. I*, 2024-Ohio-1998, at ¶ 36. Therefore, we summarily reject this argument.

**{¶ 15}** Similarly, Mother persists in her assertions that there were irregularities with the September 14, 2023 hearing conducted on Mother's objections to the May 4, 2023 temporary order, including an allegation that a hearing was not held. Not only does the record belie Mother's allegation that a hearing was not held, but as with Mother's arguments pertaining to the merits of her objections to the May 4, 2023 magistrate's temporary order addressed above, this issue is mooted by virtue of the trial court's final decision on custody rendered on December 15, 2023. *C.T.F. v. A.B.M. I* at ¶ 36. Therefore, we likewise summarily reject this argument.

**{¶ 16}** Next, Mother continues to object to the magistrate's denial of her oral motion to continue the trial set for November 15, 2023. The trial court fully addressed this same objection in its June 17, 2024 decision and judgment entry. (*See* June 17, 2024 Decision & Jgmt. Entry at 8-12.) As the trial court noted, continuances are entirely discretionary pursuant to *State v. Unger*, 67 Ohio St.2d 65 (1981). In *Brim v. Brim*, 2022-Ohio-2596, ¶ 31 (10th Dist.), citing to *Unger*, this court delineated the factors which should be considered in evaluating a request for a continuance. The trial court addressed each of these factors in its final entry and set forth in detail precisely why the magistrate's denial of appellant's request for continuance was proper. Based on our review of the record, the trial court's analysis was entirely sound, and the trial court did not abuse its discretion in coming to its conclusion.

**{¶ 17}** Finally, Mother also raises several issues not previously identified as objections to the December 15, 2023 magistrate's decision. For example, she asserts the criminal warrants for arrest issued by the Franklin County Municipal Court were improperly issued and resulted in "severe consequences" to her, and the involvement of the Missing Persons Unit "added to the already unjust treatment of [Mother] as a criminal." (*See* Brief of Appellant at 6-7.) Because these issues were not identified as objections to the December 15, 2023 magistrate's decision, any errors based on these allegations are waived, other than plain error. *Jones v. Roberts*, 2014-Ohio-2798, ¶ 5. We find no plain error on these issues, and therefore, they do not support Mother's first assignment of error.

**{¶ 18}** Accordingly, based on the foregoing, Mother's first assignment of error is overruled.

### C. Assignment of Error Two

**{¶ 19}** In her second assignment of error, Mother asserts the trial court erred by improperly relying on Father's purported mental health diagnosis of Mother.   This assignment of error is utterly meritless.

**{¶ 20}** Ohio Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

**{¶ 21}** The Supreme Court of Ohio has determined on multiple occasions that, pursuant to this rule, a lay witness may testify about an individual's emotional or mental state, including insanity or mental incapacity.  *State v. Filiaggi*, 86 Ohio St.3d 230, 244 (1999) (recognizing that lay witness testimony combined with expert testimony concerning defendant's state of mind helped establish that defendant knew the wrongfulness of his conduct); *Paugh v. Hanks*, 6 Ohio St.3d 72, 80 (1983) (stating that in a case alleging emotional distress "expert medical testimony can assist [the factfinder] in determining whether the emotional injury is indeed, serious," and "lay witnesses who were acquainted with the plaintiff, may testify as to any marked changes in the emotional or habitual makeup that they discern in the plaintiff after the accident has occurred"); *State v. Thomas*, 70 Ohio St.2d 79, 80 (1982) (noting lay witnesses testified regarding defendant's thought processes near time of criminal offense and stating that "insanity is an issue for the jury to decide" and "the jury may give more weight to lay witnesses than to experts if it so chooses"); *Weis v. Weis*, 147 Ohio St. 416 (1947), paragraph two of the syllabus ("A nonexpert witness who testifies to facts sufficient to show that he has had the opportunity to observe the mental state of a person may further testify as to whether such person was, in the opinion of the witness, of sound or unsound mind, and whether such person had the capacity to form the purpose and intent to dispose of his property by will."); *Baltimore & O.R. Co. v. Schultz*, 43

Ohio St. 270, 281 (1885) (explaining that "the opinions of non-experts, who state, so far as is practicable, the facts on which their opinions are grounded, will be received on questions . . . of the mental state or condition of another; of insanity . . .").

{¶ 22} Numerous Ohio appellate courts have found the same, *e.g.*, *State v. Sibert*, 98 Ohio App.3d 412, 426 (4th Dist. 1994) ("When based on personal observations, a lay witness may testify about another's emotional state, physical condition or sanity."); accord *State Farm Mut. Auto. Ins. Co. v. Gourley*, 2012-Ohio-4909, ¶ 36 (10th Dist.) ("Consistent with Evid.R. 701, a lay witness may testify about another's emotional state or physical condition if the testimony is based upon personal observations and first-hand perception."); *Stockdale v. Baba*, 2003-Ohio-4366, ¶ 83 (10th Dist.) (recognizing that a lay witness may express opinions about an individual's insanity); *Hunt v. Crossroads Psychiatric & Psychological Ctr.*, 2001 Ohio App. LEXIS 5388, *4 (8th Dist. Dec. 6, 2001) (permitting lay witness testimony regarding decedent's mental state); *Nationwide Mut. Fire Ins. Co. v. Turner*, 29 Ohio App.3d 73, 75-76 (8th Dist. 1986), abrogated on other grounds *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818 (determining that wife's testimony concerning husband-insured's mental state created a genuine issue of material fact regarding insured's mental state).

{¶ 23} We find the explanation provided by the Eighth District Court of Appeals in *State v. Warmus* particularly helpful:

> Neither Evid.R. 701 nor 704 limits the subject matter of lay opinion testimony, so "there is no theoretical prohibition against allowing lay witnesses to give their opinions as to the mental states of others." United States v. Rea, (C.A.2, 1992), 958 F.2d 1206, 1214-1215 (construing analogous federal rules). For example, it has been stated that "[l]ay opinion of a witness as to a person's sanity is admissible if the witness is sufficiently acquainted with the person involved and has observed his conduct" and has personal knowledge "regarding the person's unusual, abnormal or bizarre conduct." United States v. LeRoy, (C.A.10, 1991), 944 F.2d 787, 789. See, also, State v. Nicholas, (July 30, 1986), 1st Dist. No. C-850713, 1986 Ohio App. LEXIS 7717, (where an insanity defense was raised, lay opinion of a police officer concerning the defendant's mental state was appropriate on ability to perceive and respond to the display of authority of uniformed officers at the scene).

*State v. Warmus*, 2011-Ohio-5827, ¶ 11 (8th Dist.).

**{¶ 24}** Here, Father was not offering expert testimony related to a "diagnosis" of a mental health condition. Rather, he testified that Mother's behavior in the months leading up to her leaving the parties' shared home and taking their minor child with her was strange, and that he did not know what was wrong but that it could be related to a postpartum condition. (Nov. 15, 2023 Tr. at 68-69). As aptly stated by the trial court, "[t]he parties had been in a relationship and lived together for several years. [Father] would have personal knowledge of [Mother's] typical behavior and when behavior would be out of character for [Mother] . . . [and] his testimony was based upon his personal knowledge, observations, and opinion of [Mother's] behavior as a lay witness, as her former partner." (June 17, 2024 Decision & Jgmt. Entry at 14.) Thus, Father's testimony as to Mother's mental state and behavior was entirely proper pursuant to Ohio Rule of Evidence 701.

**{¶ 25}** Therefore, based on the foregoing, the trial court did not abuse its discretion or otherwise err in considering Father's testimony regarding Mother's mental health state and/or her behavior in the months leading up to her leaving with the parties' child.

**{¶ 26}** Accordingly, based on the foregoing, Mother's second assignment of error is overruled.

### D. Assignment of Error Three

**{¶ 27}** In this assignment of error, Mother asserts the trial court erred in "failing to acknowledge domestic violence and abuse." We disagree.

**{¶ 28}** As an initial matter, we note that Mother did not state an objection to the magistrate's decision on this basis. Civ.R. 53(D)(3)(b)(iv) and Juv.R. 40(D)(3)(b)(iv) provide that, except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding. In other words, the failure to raise an objection to the magistrate's decision on a particular basis in the trial court waives all but plain error on that basis on appeal. *Jones v. Roberts*, 2014-Ohio-2798, ¶ 5 (10th Dist.). Accordingly, Mother has waived all but plain error by the trial court on this issue.

**{¶ 29}** Furthermore, Mother has not cited any specific evidence in the record which substantiates her allegations of domestic abuse. Although in her brief she references the

testimony of a licensed social worker given during the July 17-18, 2023 hearing on appellant's motion for emergency custody, Mother herself concedes this testimony was based on what Mother had told the social worker—not first-hand knowledge on the part of the social worker.[1] Other references in Mother's brief to evidence which purportedly supports or otherwise corroborates her allegations of domestic abuse are likewise merely statements made by Mother—*e.g.*, the letter to Father sent from Hawaii[2] on behalf of Mother in which Mother accuses him of domestic abuse; the statements Mother made to a social worker in the context of the investigation conducted by Franklin County Children Services. (*See* Brief of Appellant at 23-24; 25.) None of this supposed "evidence" corroborates Mother's allegations but are instead simply restatements of what Mother has alleged.

{¶ 30} It is well-settled that "[t]he weight of the evidence and credibility of witnesses are issues left to the sound discretion of the trial court." *Kramer v. Kramer*, 2019-Ohio-4865, ¶ 28 (10th Dist.), citing *Galloway v. Khan*, 2006-Ohio-6637, ¶ 29 (10th Dist.), citing *White v. White*, 2003-Ohio-6316, ¶ 15 (4th Dist.). The underlying rationale for this tenet of law "is that the trier of fact is better situated than an appellate court to view the witnesses and to observe their demeanor, gestures, and voice inflections and to use those observations to weigh and assess credibility." *Id.*, citing *Galloway* at ¶ 29, citing *White* at ¶ 15. "Accordingly, the trier of fact is free to believe all, part, or none of the testimony of any witness who appears before it." *Id.*, citing *Galloway* at ¶ 29, citing *White* at ¶ 15.

{¶ 31} It is clear from the record that the trial court had serious reservations and concerns regarding Mother's credibility, both in general and as it specifically related to the subject of Mother's allegations of domestic violence and sexual abuse of the minor child.

---

[1] We also point out that Mother has failed to specifically cite to the portions of the record to which she refers, as required by App.R. 16(A)(7). "An appellate court may disregard arguments if the appellant fails to identify the relevant portions of the record from which the errors are based." (Further citations omitted.) *Hardy v. Belmont Corr. Inst.*, 2006-Ohio-3316, ¶ 10 (10th Dist.), citing App.R. 12(A)(2).

[2] According to Mother, the letter was a letter she wrote to Father "informing him what prompted her to leave on January 31, 2023," including her allegations of domestic abuse and sexual abuse he inflicted on the minor child. Mother asserts the letter supports her allegations of domestic abuse because Father "acknowledges the contents of the letter[.]" (*See* Brief of Appellant at 23-24.) But merely acknowledging the letter contains allegations of abuse does not amount to an admission that such abuse did in fact occur.

Indeed, in its June 17, 2024 decision and entry from which Mother now appeals, the trial court made no less than five separate references to those concerns: "The Court finds [Mother's] concern regarding appearing on Zoom to be disingenuous and has serious concerns about [Mother's] credibility" (June 17, 2024 Decision & Jgmt. Entry at 10-11); "[Mother's] conduct has been disingenuous and disrespectful" (*Id.* at 11); "[Mother] has provided no credible explanation as to why it would put the child in danger for [Father] to see the child via Zoom" (*Id.* at 15); "[Mother] is essentially asking this Court to take her word that the child is alive and well and ignore that she has violated numerous orders of this Court to produce the child. Unfortunately, due to [Mother's] own conduct, she has no credibility with this Court" (*Id.* at 16); "[Mother] has not argued that she has any additional evidence to support her allegations [regarding sexual abuse] against [Father], nor does she provide any credible explanation as to why, if she did have additional evidence, she could not have presented it at any of the numerous hearings held in this case." (*Id.* at 19.)

**{¶ 32}** Based on the record before us, it appears the trial court's concerns regarding Mother's credibility are, at the very least, reasonably sound. Thus, we find that Mother has not shown that the trial court plainly erred in finding Mother's unsubstantiated allegations of domestic abuse to be not credible.

**{¶ 33}** Accordingly, Mother's third assignment of error is overruled.

### E.  Assignment of Error Four

**{¶ 34}** In her fourth assignment of error, Mother asserts she received ineffective assistance of counsel in the trial court proceedings. This assignment of error is easily dispensed with.

**{¶ 35}** We have previously observed that " ' "[w]hile the law clearly allows a reversal for incompetent or inadequate representation of counsel in criminal actions, such allegations cannot constitute a basis for reversal in civil matters." ' " *Bonn v. Bonn*, 2013-Ohio-2313, ¶ 17 (10th Dist.), quoting *Marcus v. Seidner*, 2011-Ohio-5592, ¶ 52 (12th Dist.), quoting *McGlothin v. Stout*, 1989 Ohio App. LEXIS 3126, *7 (12th Dist. Aug. 14, 1989). "[A] claim of ineffective assistance of counsel is not a proper ground on which to reverse the judgment of a lower court in a civil case that does not result in incarceration when the

attorney was employed by a civil litigant." *Id*., citing *Phillis v. Phillis*, 2005-Ohio-6200, ¶ 53 (5th Dist.), citing *Roth v. Roth*, 65 Ohio App.3d 768, 776 (6th Dist. 1989).

{¶ 36} In *Roth*, the Lucas County Court of Appeals stated, in pertinent part:

> The Sixth Amendment to the United States Constitution provides a right to effective assistance of counsel in a criminal proceeding. *Strickland v. Washington*, (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, L.Ed.2d 674, 692. The right to be represented by counsel in a civil proceeding where the state seeks to take the defendant's life, liberty, or property is guaranteed by the Fifth Amendment to the United States Constitution as applied to the states by the Fourteenth Amendment. *However, in a civil case between individual litigants, there is no constitutional right to representation.* The state does provide a forum, via the judicial system, in which litigants can resolve disputes. Litigants may seek to be represented in this forum by attorneys trained in procedure and the law. But it is the litigant himself who selects that attorney. Therefore, the litigant cannot thereafter complain that his attorney was ineffective and require the other litigant to bear the loss for such negligent selection of an attorney. . . . [*A*]*ny complaint of ineffective assistance of counsel may only be resolved in a malpractice action.*

(Citation omitted.) (Emphasis added.) *Id*. at 776.

{¶ 37} The case before us is not a criminal proceeding; thus, appellant has no Sixth Amendment right to effective assistance of counsel. Furthermore, this case is not a civil proceeding where the state seeks to take the defendant's life, liberty, or property; thus, appellant has no Fifth Amendment right to effective assistance of counsel. Where there is no right to counsel in the first instance, there can be no basis for reversal based on an allegation of ineffective assistance of counsel.

{¶ 38} Accordingly, we overrule Mother's fourth assignment of error.

**F. Assignment of Error Five**

{¶ 39} In her fifth and final assignment of error, Mother contends the cumulative effect of the trial court's errors resulted in depriving her of due process and a fair trial. This assignment of error is entirely without merit.

{¶ 40} Under the doctrine of cumulative error, an appellate court will reverse a criminal conviction if "the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 2012-Ohio-2577, ¶ 223. However, we have repeatedly found that the doctrine of cumulative error does not typically apply to civil cases. *Jenkins v. Grawe*, 2019-Ohio-2013, ¶ 59 (10th Dist.); *Huntington Natl. Bank v.* Haehn, 2018-Ohio-4837, ¶ 55 (10th Dist.); *Jarvis v. Hasan*, 2015-Ohio-1779, ¶ 92 (10th Dist.); *Stanley v. Ohio State Univ. Med. Ctr.*, 2013-Ohio-5140, ¶ 124 (10th Dist.); *Bogdas v. Ohio Dept. of Rehab. & Corr.*, 2009-Ohio-6327, ¶ 43 (10th Dist.); *In re Guardianship of Clark*, 2009-Ohio-3486, ¶ 27 (10th Dist.). Furthermore, where there is no error, harmless or otherwise, there can be no cumulative error. *See Bogdas* at ¶ 43.

{¶ 41} As previously pointed out, the case before us is not a criminal proceeding; rather, it is a civil proceeding. Therefore, the doctrine of cumulative error is inapplicable. Furthermore, even if it were applicable, we have already found no error regarding Mother's other assignments of error. As stated above, where there is no error in the first instance, there cannot be any cumulative error. Therefore, we find no cumulative error in this matter. Accordingly, Mother's fifth assignment of error is overruled.

## IV. Disposition

{¶ 42} Having overruled Mother's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Division.

*Judgment affirmed.*

MENTEL and BOGGS, JJ., concur.

———————————