[Cite as *Beyer v. Beyer*, 2024-Ohio-1278.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MEGAN COLOSIMO BEYER,                   :

      Plaintiff-Appellant/                   :
      Cross-Appellee,                                   Nos. 112887 and 112912

      v.                                     :

JAMES S. BEYER, JR.,                    :

      Defendant-Appellee/
      Cross-Appellant.                       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; VACATED IN PART;
            AND REMANDED
**RELEASED AND JOURNALIZED:** April 4, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-22-388896

---

### *Appearances:*

Costanzo & Lazzaro, P.L.L., and Raymond J. Costanzo, *for appellant/cross-appellee*.

Rosenthal│Lane, L.L.C., Scott S. Rosenthal, and Alarra S. Jordan, *for appellee/cross-appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Megan Colosimo Beyer ("Wife") appeals the decision of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, advancing arguments

pertaining to issues of child support, division of property, and her failure to comply with the domestic relations court's mutual restraining order. James S. Beyer, Jr. ("Husband"), cross-appeals from the domestic relations court's child support and cash medical support orders. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. Background

{¶ 2} Wife and Husband were married in November 2014. Wife filed a complaint for divorce on March 3, 2022; Husband filed an answer and counterclaim. At the time of trial, which commenced on March 21, 2023, the parties had two minor children, ages ten and six. Prior to trial, Husband and Wife filed a shared parenting plan, leaving only the issues of property division and support for trial.

{¶ 3} After trial, the domestic relations court issued a written decision (1) finding that the marital home was Husband's separate property but awarding Wife $36,000 as satisfaction of her interest in the property, less $1,387.91 based on Wife's violation of a mutual restraining order; (2) awarding the parties their own vehicles, bank accounts, and credit cards; (3) awarding Wife her cosmetology business, Suite Sashay, LLC, as well as the numerous items of personal property from the marital home listed on Wife's exhibit No. 9; (4) awarding Wife 50 percent of Husband's 401(k) earned through his employment at Momentive Technologies Materials; and (5) ordering Husband to pay $734.18 per month child support ($367.09 per month

per child) and $37.11 per month cash medical support effective May 1, 2023.[1] Wife appealed, and Husband cross-appealed from these decisions.

## II. Law and Analysis

### A. Wife's Appeal

### 1. The Marital Home

{¶ 4} At trial, the parties stipulated that the value of the home at the time of trial was $200,000. In its judgment entry of divorce, the domestic relations court found that as demonstrated by the warranty deed and mortgage documents produced by Husband at trial, Husband purchased the home in 2010 for $128,600. He made a down payment of $1,709 with monies from his Citizens Bank account and financed the remainder of the purchase price with a $126,891 mortgage in his name.

{¶ 5} The domestic relations court found that Husband acquired the home prior to the date of the marriage and that it was therefore his separate property pursuant to R.C. 3105.171(A)(6)(a)(ii), which provides that "separate property" means real property "that was acquired by one spouse prior to the date of the marriage." The court further found that although "Wife attempts to assert that she is entitled to some interest in the real property," she "failed to present any evidence of the value of the property at the time of the marriage or income and appreciation

---

[1] A copy of the parties' shared parenting plan was attached as Exhibit A to the court's judgment entry and a copy of the child support computation worksheet was attached as Exhibit B.

on separate property due to labor, monetary, or in-kind contributions of either or both spouses that occurred during the marriage." *See* R.C. 3105.171(A)(3)(a)(iii). Despite the court's conclusion, it found that "based on testimony presented at trial," Wife's interest in the property was valued at $36,000, less $1,387.91 for her violation of the court's mutual restraining order. Accordingly, although the court ordered that the marital home was Husband's separate property, it ordered Husband to pay Wife $34,612.09 to settle what represented Wife's interest in the appreciated value of the property.

{¶ 6} In her first assignment of error, consisting of two paragraphs of discussion and analysis, Wife contends that the domestic relations court erred in finding that the marital home was Husband's separate property. According to Wife, when "commingled marital funds are used to pay expenses of separate real estate, the real estate is properly considered marital property subject to equitable division under R.C. 3105.171(C)(1)."

{¶ 7} R.C. 3105.171 governs the domestic relations court's determination of whether assets are marital or separate. Marital property generally includes all property acquired by either spouse during the marriage, and separately, the appreciation of (or income derived from) separate property due to the labor, monetary, or in-kind contributions of either party during the marriage. R.C. 3105.171(A)(3)(a)(i) and (iii). Marital property does not include separate property. R.C. 3105.171(A)(3)(b). "Separate property" includes all real and personal property that was acquired by one spouse prior to the marriage, and distinct from that, any

"passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii) and (iii).

{¶ 8} Thus, in pertinent part, there are two separate inquiries with respect to dividing property, especially where real property is concerned: (1) is the property itself separate, and if so, (2) is the appreciation of that property considered separate property that is independently traceable. *See, e.g., Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, ¶ 23 (husband traced the premarital equity for the purposes of demonstrating that portion of the equity was separate property and the trial court erred in concluding otherwise).

{¶ 9} For the purposes of evaluating real estate, the issue in this appeal, if one spouse traces the property to a premarital purchase with separate funds, that real property acquired before marriage is deemed separate property. R.C. 3105.171(A)(6)(a)(ii) and (A)(6)(b). After that, the inquiry shifts to the appreciation or passive income derived from that separate property, which also remains separate property under a different provision of the statute, R.C. 3105.171(A)(6)(a)(iii), if the passive income or appreciation is traceable. Appreciation and income derived from separate property is a separate consideration under the statute, which is addressed only if the property is deemed separate property.

{¶ 10} However, not all appreciation or income from property is considered separate property. If the income or appreciation of separate property is "due to the labor, monetary, or in-kind contribution of either or both of the spouses that

occurred during the marriage" that appreciation or income is deemed marital property. R.C. 3105.171(A)(3)(a)(iii). Thus, in order to demonstrate that the appreciation and income derived from the separate property should remain separate property, the proponent must demonstrate that the appreciation of the asset or the income derived therefrom is traceable as separate property. *See, e.g., Ockunzzi* at ¶ 23. But if the appreciation or income was due to marital labor or funds, the appreciation or income is considered marital property. Even if the appreciation or income was due to marital labor or funds, however, that does not convert the separate property into marital property. Only the appreciation or income on or from the separate property is deemed marital property. R.C. 3105.171(A)(3)(a)(iii).

{¶ 11} In this appeal, Wife argues that the domestic relations court erred by considering the home separate property of Husband but assigns no error to the domestic relations court dividing the purported appreciation in the value of the home equally among the parties. According to the domestic relations court, the home was valued at $200,000 based on the earlier purchase price of approximately $128,000, roughly leaving $72,000 in appreciation as of the trial. Half of that was awarded to Wife, and neither party disputes that calculation or determination in this appeal.

{¶ 12} Wife instead claims that the real property itself is also marital property. It is undisputed, however, that the home was purchased by Husband before the marriage and is traceable to his own funds acquired before the marriage. There is no evidence that Wife contributed, financially or otherwise, to the purchase

of the home. Under R.C. 3105.171(A)(6)(a)(ii) and (A)(6)(b), the real property is separate property — Husband provided proof that the real property was purchased before the marriage with his own funds. *See, e.g., Favri v. Favri*, 7th Dist. Carroll No. 22 CA 0955, 2022-Ohio-2063, ¶ 27 (use of marital funds for home improvement did not destroy the separate property classification), citing *Akers v. Akers*, 2015-Ohio-3326, 40 N.E.3d 699, ¶ 13 (7th Dist.).

{¶ 13} Wife should be arguing either of two things: that the appreciation in the value of the home is marital property under R.C. 3105.171(A)(3)(a)(iii) based on the use of marital funds during the marriage to pay for expenses and contributing to appreciation or that Husband cannot demonstrate that the appreciation of the separate property is itself separate property under R.C. 3105.171(A)(6)(a)(iii). She failed to demonstrate that any appreciation was due to her contribution under R.C. 3105.171(A)(3)(a)(iii), a finding by the domestic relations court not contested in this appeal. *See* App.R. 16(A)(7); *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part), and *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). And, Wife has not argued, demonstrated, or discussed whether Husband proved that the appreciation of the real property was separately traceable.

{¶ 14} Instead, as already mentioned, Wife contends that the domestic relations court erred in determining that the entirety of the real property was Husband's separate property because although Husband admittedly purchased the

home prior to the parties' marriage, commingled marital funds were used to pay the mortgage, taxes, insurance, maintenance, and improvements to the home during the marriage. On that alone, Wife's argument must fail. Under R.C. 3105.171(A)(6)(a)(ii) and (A)(6)(b), the commingling of funds alone does not destroy the identity of the separate property that is otherwise traceable. In this case, Husband affirmatively demonstrated that he purchased the property before the marriage with his own funds, i.e., he traced the purchase to his premarital assets.

{¶ 15} Wife bases her entire argument on the narrow proposition that "if commingled marital funds were used to pay the expenses of separate real estate, the real estate is properly considered marital property subject to equitable division." *Johnson v. Mills*, 8th Dist. Cuyahoga No. 102241, 2015-Ohio-4273, ¶ 27, citing *Robinette v. Robinette*, 8th Dist. Cuyahoga No. 88445, 2007-Ohio-2516, ¶ 23. *Johnson*, however, cannot stand for that proposition since it directly contradicts R.C. 3105.171(A)(6)(b), which unambiguously provides that the "commingling of separate property with other property of any type *does not* destroy the identity of the separate property as separate property, except when the separate property is not traceable." (Emphasis added.) Thus, under the statute, "traceability becomes the focus in determining whether separate property has lost its character after being commingled with marital property." *Lichtenstein v. Lichtenstein*, 8th Dist. Cuyahoga No. 108854, 2020-Ohio-5080, ¶ 21, citing *Peck v. Peck*, 96 Ohio App.3d 731, 645 N.E.2d 1300 (12th Dist.1994); *Robinette* at ¶ 23. Commingling alone is not sufficient to deem the property to be marital property. *Robinette* understood the

distinction between commingling and traceability, but that distinction did not make its way into *Johnson's* analysis. *Robinette* at ¶ 23.

{¶ 16} *Johnson* appears to have converted the traceability inquiry into a focus on the commingling of assets. Accepting Wife's narrow proposition quoting *Johnson* in isolation would force this panel to contradict the statutory and binding case authority. R.C. 3105.171(A)(6)(b); *Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, at ¶ 23. We cannot accept that invitation. And it is for this reason that our decision does not create a conflict in this district. In light of the binding authority, which must be adhered to, the law is settled in this district that the primary concern involving separate property under R.C. 3105.171(A)(6)(b) is traceability, not the mere commingling of funds. *Johnson* is an outlier, limited to the particular facts before that panel.

{¶ 17} We are further hampered by the limited briefing. In this appeal, Wife asks this panel to follow *Johnson*, but she provides no context, discussion, or argument discussing the totality of the statutory authority. *See* App.R. 16(A)(7). She further does not address the fact that the domestic relations court awarded her $36,000 (less the penalty for her violation of a restraining order) for her equitable interest in the appreciated value of the home despite her inartful framing of the issue. As the court unambiguously concluded, the house was valued at $200,000 at the time of the divorce upon agreement of the parties, and Wife was awarded $36,000 representing her half interest in that total appreciation as calculated based

on the purchase price of the property. Neither party challenges the amount of that award in this appeal nor the calculation of the appreciated value in the home.

{¶ 18} In light of the fact that (1) accepting the statement from *Johnson* would require this panel to ignore the combination of R.C. 3105.171(A)(6)(a)(ii), (A)(6)(b), and (A)(3)(a)(iii), along with binding authority from this district, and (2) that Wife's discussion presented does not account for the totality of the law or the judgment below, the first assignment of error is overruled.[2]

## 2. Child Support

{¶ 19} In her second assignment of error, Wife asks this court to reverse the domestic relations court's child support calculation because it used inaccurate income figures in calculating Husband's child support obligation.

{¶ 20} A domestic relations court's decision regarding child support obligations will not be reversed on appeal absent an abuse of discretion. *In re M.L.H.*, 8th Dist. Cuyahoga No. 110031, 2021-Ohio-2681, ¶ 12. "'Abuse of discretion' is a term of art, describing a judgment neither comporting with the

---

[2] We recognize that Wife's reply brief includes further analysis and discussion omitted from her initial briefing, especially as it pertains to the first and second assignments of error. Although the reply brief was reviewed, we cannot base our decision on the discussion and analysis provided for the first time therein, even though that discussion and analysis could arguably be considered extensions of the original arguments that were presented in a cursory fashion. We cannot condone the tactic of presenting a short argument in the opening brief only to present a more detailed version of the analysis and discussion in reply after the appellee has responded. That tactic, of tersely mentioning a potential issue in the opening brief and then supporting the conclusionary argument with analysis and a discussion for the first time in a reply brief, deprives the appellee of any opportunity to respond. *See, e.g., Suburban Natural Gas Co. v. Columbia Gas of Ohio, Inc.,* 162 Ohio St.3d 162, 2020-Ohio-5221, 164 N.E.3d 425, ¶ 15, fn. 2.

record, nor reason." *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 12, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *AAAA Ents. Inc. v. River Place Community Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 21} Wife contends, limiting this discussion and analysis to three paragraphs, that the domestic relations court erred in using the Social Security and Medicare wages of $52,968.98, reflected on Husband's 2022 year-end pay stub (Wife's exhibit No. 1), as his "gross income" for 2022 instead of his year-to-date earnings of $61,911.15 as reflected on the pay stub. She also claims that the court overstated her "self-generated income" by almost $20,000. It should be noted, however, that the domestic relations court did not include Husband's 2022 income as "gross income" in the worksheet. The income for 2022 was listed under the "annual amount of overtime, bonuses, and Commissions" section. It is unclear from the limited argument presented whether that impacts the outcome.

{¶ 22} For the purposes of this appeal, it must be noted that the second assignment of error, as presented in the opening brief, contains no case or statutory authority supporting the arguments presented, nor any discussion or analysis upon which it could be concluded that reversible error occurred. *See* App.R. 16(A)(7); *Russo v. Gissinger*, 9th Dist. Summit No. 29881, 2023-Ohio-200, ¶ 30.[3]

---

[3] *See* fn. 2 above.

Accordingly, we will not delve deeper. It is not an appellate panel's role to provide the necessary authority and analysis to justify a decision to reverse the lower court. *See Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900.

{¶ 23} It suffices for the purposes of this appeal that Wife has not demonstrated that the domestic relations court abused its discretion with respect to the factual foundation establishing the parties' income for the purposes of the child support computation worksheet. The second assignment of error is overruled.

### 3. Mutual Restraining Order

{¶ 24} Upon the filing of the complaint for divorce, the domestic relations court issued a mutual restraining order, enjoining each party from, among other things, "incurring debt on existing lines of credit or credit cards in the name of the other spouse or in the spouses' joint names, unless by prior agreement of the spouse or order of the court."

{¶ 25} Husband testified at trial that during the marriage, Wife paid for the gas, water, sewer, and electric bills related to the marital residence and he paid the mortgage and insurance. Wife acknowledges in her appellate brief that this was indeed the parties' custom during the marriage. (Appellant/Cross-appellee's brief, p. 9.) Husband testified that during the pendency of the divorce proceedings, while the parties and their minor children were living in the marital residence, he received shutoff notices for the utilities several times. He testified that he "had to pay $2,000 more than one time" to keep the utilities current. Husband produced Exhibit W at trial, which contained, among other invoices, an invoice for $1,387.91 from the

Northeast Ohio Regional Sewer District, dated August 22, 2022, that Husband testified he had to pay because Wife had not done so. The domestic relations court found that Wife's failure to pay this bill was a violation of the mutual restraining order and awarded Husband $1,387.91 for Wife's violation of the order.

{¶ 26} In her third assignment of error, Wife contends that the domestic relations court's ruling was an abuse of discretion. We find no merit to this argument.

{¶ 27} Although Wife contends that she "cancelled" many of the parties' customs regarding bill payment from September 2019 to September 2020, when she stopped working to care for the parties' younger son, she cites to no trial testimony or other documentation that supports this assertion.[4] We agree that Husband's Exhibit W contains several invoices that Husband presumably paid because Wife did not, but we recognize that those invoices are from 2021, before the complaint for divorce was filed, and that they would therefore not be subject to the restraining order. Nevertheless, the invoice for $1,387.91 from the Northeast Ohio Sewer District contained in Husband's Exhibit W was dated August 22, 2022, which was during the pendency of the divorce proceedings. Because Wife did not pay this

---

[4] Husband's and Wife's trial testimony established that their younger son was diagnosed with cancer in September 2019. Wife closed her business for approximately one year during the child's treatment, and Husband took extensive time off work, including using time offered by the Family Medical Leave Act several times and a Family Hardship Leave granted by his employer. Wife's cousin started a GoFundMe campaign that elicited approximately $2,000 in donations for the family, and Husband withdrew approximately $30,000 from his 401(k) account during this time to assist with the family's finances.

utility bill as was her responsibility, we find that the domestic relations court did not abuse its discretion in concluding that Wife's failure to pay the invoice caused Husband to incur debt he otherwise would not have had, in violation of the court's mutual restraining order, and awarding Husband $1,387.91, the amount of the invoice, for her violation. The third assignment of error is overruled.

## B. Husband's Cross-Appeal

### 1. A Downward Deviation in Child Support Calculation

{¶ 28} In his first cross-assignment of error, Husband contends that the domestic relations court erred in ordering that he pay $771.29 per month in child support because although the court concluded in its journal entry that a 10 percent downward deviation in child support was warranted because of Husband's extended parenting time, the child support computation worksheet reflects an upward deviation of $66.74 instead of a downward deviation. Wife concedes the error. Upon remand, the domestic relations court is instructed to apply the 10 percent downward deviation to Husband's child support obligation. The first cross-assignment of error is sustained.

### 2. Cash Medical Support

{¶ 29} Husband next contends that the domestic relations court erred by not deviating the cash medical support amount to $0.00 because the parties specifically agreed in the shared parenting plan that Husband would maintain the children's medical insurance and the parties would split the medical costs equally.

{¶ 30} R.C. 3119.30(C)(1) states that "cash medical support" is "an amount ordered to be paid in a child support order toward the medical expenses incurred during a calendar year." The domestic relations court's journal entry included this definition of cash medical support, but then, despite the parties' agreement in the shared parenting plan that "medical expenses not covered by insurance shall be split equally between the parties" and that "health care expenses for the minor children shall be paid equally by the parties," the domestic relations court ordered Husband to pay Wife cash medical support. We find this to be an abuse of discretion.

{¶ 31} Wife contends that because the domestic relations court issued a child support order, it was required pursuant to R.C. 3119.30(C) to issue a cash medical support amount to be paid with Husband's child support order. R.C. 3119.30(C) states that "[w]hen a child support order is issued, the order shall include a cash medical support order consistent with division (B) of section 3119.302 of the Revised Code for each child subject to the order." R.C. 3119.302(B) states that the director of job and family service shall periodically update the amount of cash medical support obligation to be paid pursuant to R.C. 3119.30(C).

{¶ 32} Although the domestic relations court is required by law to enter a cash medical support order, neither statute prohibits the court from deviating from the amount of cash medical support calculated on the child support computation worksheet. Indeed, Ohio courts have recognized that R.C. 3119.22 and 3119.23 allow a court to deviate from the cash medical support amount calculated on the worksheet and order payment of $0.00 in cash medical support in appropriate

circumstances.[5] *See Macknight v. Macknight*, 12th Dist. Butler No. CA2021-07-078, 2022-Ohio-648 (affirming the domestic relations court's downward deviation of the child support calculation and its full deviation of cash medical support to $0.00); *Siders v. Siders*, Union C.P. No. 09 DR 0043, 2009 Ohio Misc. LEXIS 12483 (July 1, 2009) (court ordered that neither party would pay cash medical support, finding that a deviation of the cash medical support amount was appropriate under R.C. 3119.22 because if cash medical support were ordered, the in-kind contributions of the parent under the shared parenting plan would have to be decreased and the standard of living of the parent and the children would suffer); *Smith v. Smith*, Summit C.P. No. 15 DR-A 0253, 2015 Ohio Misc. LEXIS 26318 (Dec. 3, 2015) (obligor ordered to pay obligee $0.00 per month in cash medical support because upon consideration of the deviation factors set forth in R.C. 3119.23 as applied to the facts of the case, the cash medical support computation from the child support computation worksheet would be "unjust, inappropriate, and not in the children's best interest.").

{¶ 33} We reach the same result here. Because Husband and Wife expressly agreed in the shared parenting plan to split the children's medical expenses equally, it would be unjust to order Husband to nevertheless pay Wife cash medical support. Accordingly, we reverse the domestic relations court's order that Husband pay cash

[5] R.C. 3119.22 provides that a court may deviate from the amounts calculated on the child support computation worksheet if the court determines, after considering the R.C. 3119.23 deviation factors, that the amount calculated would be unjust or inappropriate and therefore not in the best interest of the child.

medical support and remand for the court to enter an order that Husband pay $0.00 per month in cash medical support. Husband's second cross-assignment of error is sustained.

### 3. Effective Date of Child Support

{¶ 34} Last, Husband contends that the domestic relations court erred by ordering his child support obligation effective as of May 1, 2023. Husband contends that Wife and the children were still living in the marital residence as of May 1, 2023, and that his child support obligation should not have begun until after Wife moved out of the residence.

{¶ 35} Husband cites to nothing in the record to support his assertion that Wife remained in the home after May 1, 2023, nor to any case law demonstrating that the domestic relations court abused its discretion in ordering Husband's child support effective as of May 1, 2023. Accordingly, the third cross-assignment of error is overruled.

## III. Conclusion

{¶ 36} In sum, we vacate the court's child support order and remand for recalculation consistent with this opinion; we also vacate the court's order of cash medical support. We affirm the domestic relations court's decision in all other respects.

{¶ 37} Affirmed in part; vacated in part; and remanded.

It is ordered that the parties share equally costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
KATHLEEN ANN KEOUGH, A.J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

KATHLEEN ANN KEOUGH, A.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 38} Respectfully, I concur in part and dissent in part.

{¶ 39} With respect to the first assignment of error, I concur with the majority's conclusion that the marital residence was Husband's separate property. I further find that the trial court did not abuse its discretion in dividing the appreciation in the value of the home equally between the parties. *See Hampton v. Hampton,* 8th Dist. Cuyahoga No. 78091, 2001 Ohio App. LEXIS 3018, 10 (July 5, 2001) (a trial court reviews the trial court's division of marital property for an abuse of discretion).

{¶ 40} Nevertheless, I would find that the trial court abused its discretion in not equitably dividing the reduction in the mortgage during the marriage between Husband and Wife. "Any reduction in the amount of a mortgage during the marriage by payment with marital funds contributes to the equity in the property

and becomes marital property." *Forbis v. Forbis*, 6th Dist. Wood Nos. WD-04-056 and WE-04-063, 2005-Ohio-5881, ¶ 62, citing *Ray v. Ray*, 9th Dist. Medina No. 03CA0026-M, 2003-Ohio-6323, ¶ 8; *see also Gosser v. Gosser*, 11th Dist. Trumbull No. 2006-T-0029, 2007-Ohio-3201, ¶ 42 (any reduction of the mortgage on the marital residence during the marriage by payment of marital funds is marital property subject to equitable division).

{¶ 41} Importantly, although it is undisputed that during the marriage Wife paid the utilities related to the property from the profits of her business, Wife's or any spouse's entitlement to an equitable distribution of the mortgage reduction is not dependent on that spouse's financial contribution to the mortgage reduction or expenses related to the marital home. Where marital funds are used to pay the mortgage, a spouse is entitled to an equitable distribution of any mortgage reduction simply by virtue of being married. *See Goebel v. Werling*, 9th Dist. Summit No. 19385, 1999 Ohio App. LEXIS 3443, 3 (July 28, 1999) ("The reduction in a mortgage during a marriage is equivalent to a marital investment and is considered part of the marital equity.").

{¶ 42} In this case, it cannot be reasonably disputed that marital funds were used to pay down the mortgage. Husband's argument that no marital funds were used to pay the mortgage because his wages from his employment during the marriage were deposited into his separate bank account, from which he paid the mortgage, ignores the fact that income earned by a spouse from employment during the marriage is considered marital funds. R.C. 3105.171(3)(a). Husband's and

Wife's maintenance of separate bank accounts does not transform wages earned during the marriage and deposited into those accounts into personal property.

{¶ 43} Accordingly, I would find that because marital funds were used to pay down the mortgage, the mortgage debt reduction should have been classified as marital property, and therefore, the trial court abused its discretion in not making that classification and in failing to equitably distribute the mortgage debt reduction between Husband and Wife. I would remand for recalculation of Wife's interest in the marital home to include an equitable distribution of the mortgage debt reduction.

{¶ 44} I otherwise concur with the remainder of the majority's decision.