[Cite as *Taylor v. Taylor*, 2026-Ohio-2168.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARIANNE GRACE TAYLOR, | : | APPEAL NO. C-250367 |
| | | TRIAL NO. DR-2301369 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| ALEXANDER PAUL TAYLOR, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 6/10/2026 per order of the court.**


**By:**_____
        **Administrative Judge**

[Cite as *Taylor v. Taylor*, 2026-Ohio-2168.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| MARIANNE GRACE TAYLOR, | : | APPEAL NO. | C-250367 |
| | | TRIAL NO. | DR-2301369 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| ALEXANDER PAUL TAYLOR, | : | | |
| Defendant-Appellant. | : | | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 10, 2026

*Keating Muething & Klekamp PLL, Bryce J. Yoder,* and *Adrienne J. Roach*, for Plaintiff-Appellee,

*Thomas D. Molony*, for Defendant-Appellant.

**MOORE, Judge.**

{¶1} Defendant-appellant Alexander Paul Taylor ("Husband") appeals the domestic relations court's judgment with respect to its classification and distribution of proceeds from the sale of Husband's business interest and the parties' marital home. Husband argues in his first assignment of error that the court erred by ordering that the proceeds from the sale of his business interest were marital property subject to division because those funds were not paid to Husband until after the de facto termination date of the marriage. In his second assignment of error, Husband argues that the domestic relations court erred by failing to order the marital home sold to maximize the sale price for the property. We disagree. Based on the reasons stated herein, we affirm the domestic relations court's judgment.

## I. Factual and Procedural History

{¶2} Husband and plaintiff-appellee Marianne Grace Taylor ("Wife") were married on August 22, 2015. Wife filed a complaint for divorce on August 10, 2023, Husband timely filed an answer and counterclaim, and the matter proceeded to trial.

## A. The Magistrate's Findings of Fact and Conclusions of Law

### 1. The Marital Residence

{¶3} The parties stipulated that the marriage ended on December 31, 2022. The parties also stipulated that Wife purchased the residence located on Floral Avenue ("Floral home") in June 2014 for $290,000—before the parties' marriage—making a down payment of $58,000 and taking out a mortgage solely in her name for $232,000. The parties further stipulated that the mortgage balance was $224,911 when the couple married. The magistrate found that Wife's mortgage paydown was $7,089 as of the date of the parties' marriage.

{¶4} The parties also stipulated that they took another mortgage out on the

home for $215,700 in March 2016. Based on the "Satisfaction of Mortgage" that Husband submitted to the court, the original $232,000 mortgage that Wife obtained was paid in full on May 31, 2016. The parties also stipulated that they obtained a home equity line of credit ("HELOC") in the amount of $73,000 in December 2017. The magistrate found no evidence that the HELOC was utilized.[1] The parties further stipulated that the mortgage balance as of the de facto marriage end date was $127,351 and that the title was only in Wife's name.

{¶5} The magistrate found that the mortgage paydown over the duration of the marriage was $97,560. The magistrate also found that the refinancing of the mortgage in 2016 and obtaining the line of credit in 2017 did not destroy the individual identity of Wife's separate property, and that neither party provided evidence to show whether any funds or equity were withdrawn or commingled to such an extent as to render it untraceable.

{¶6} The magistrate's entry stated that the court did not receive evidence of the value of the Floral home at the start of the marriage. The magistrate found that the value of the home was $430,000, based on the testimony of the appraiser who Wife had hired to complete an appraisal in April 2023. Wife was the only party to obtain an appraisal of the residence, and the April 2023 appraisal was the only appraisal that was obtained after the de facto end of the marriage on December 31, 2022.

{¶7} The magistrate concluded that the Floral home was Wife's separate property and that while the Floral home increased in value during the marriage, there was no evidence to suggest that the increase in the value of the Floral home was anything but passive appreciation, i.e., the result of market forces, because the

---

[1] Wife testified at the trial that she borrowed "maybe" "a couple thousand dollars" to get a lower interest rate on the HELOC and paid it off the next day.

evidence showed that only minimal improvements were made to the home during the marriage. The magistrate found, therefore, that only the paydown of the mortgage was marital property subject to division.

### 2. *The Proceeds from Husband's Sale of His Interest in a Business*

**{¶8}** Husband was 50 percent owner of GreenLight Sales Strategies LLC ("Greenlight"). Greenlight operated another business called the Oval Room Group ("Oval Room"). In March or April 2022, Greenlight closed on the sale of Oval Room to Buildout, Inc., ("Buildout"). The total purchase price for Oval Room was $4,954,190, which was to be paid to GreenLight. Because Husband owned 50 percent of GreenLight, he was entitled to half of the proceeds received by the company.

**{¶9}** The parties stipulated that the purchase price for Oval Room was divided into three components:

- **Amount Paid at Closing**—$3,954,190. (Husband's 50 percent share was $1,977,095.)

- **Adjustment Escrow**—$250,000. This amount was withheld from the purchase price to cover potential post-closing adjustments to working capital. Following a final determination in mid-2023, $171,116 was released to GreenLight. (Husband's 50 percent share was $85,558.)

- **Indemnity Escrow—$**600,000. This amount was released to GreenLight in April 2024. (Husband's 50 percent share was $300,000.)

**{¶10}** The parties stipulated that Husband's interest in Oval Room was marital. The parties further stipulated that Wife was to receive $988,547.50, half of Husband's apportionment of the nonescrowed amount paid at closing. ($1,977,095 x 50% = $988,547.50 (Husband's share of purchase price paid at closing).)

**{¶11}** Husband disagreed that Wife was entitled to a portion of the sale

5

proceeds that were placed in escrow. He believed that the escrowed funds were separate from the funds disbursed at closing because the escrowed funds were not distributed until after the de facto termination date of the marriage. He asserted that the distribution of the funds was contingent on him successfully fulfilling his employment obligation with Buildout, which would also occur after the de facto termination date of the marriage.

### 3. *Husband Objects to the Magistrate's Decision*

{¶12} Husband's objection challenged the magistrate's decision regarding the Floral home and the division of the escrow payments that were withheld from the proceeds of the sale of Oval Room. Husband asserted that the magistrate failed to address the repayment of the HELOC that was taken out on the Floral home in 2017 and that the magistrate erred by not ordering the Floral home to be sold to maximize its value and the proceeds, which should have then been divided equally. Husband further asserted that the magistrate's decision "essentially ma[de] [him] a renter [for the duration of the marriage] and eliminate[d] his right to an equitable division of the Floral property" while at the same time continuing to require him to be on the mortgage.

{¶13} Regarding the escrow payments, Husband argued that the magistrate erred in finding that there was insufficient testimony to show that the escrow payments were separate property. Husband again argued that his employment period with Buildout was three years, he was subject to termination at will by Buildout, and that he would not be entitled to any compensation if he were terminated. Husband's objection noted that his "sole labor and efforts after the end date of the marriage resulted in the Adjustment Escrow payout."

6

*4. The Parties' Arguments on Objections*

**{¶14}** During oral argument to the domestic relations court on Husband's objections, Husband conceded that he did not get a separate appraisal of the Floral home. He challenged the magistrate's valuation of the home, arguing that there was no determination of the value of the house at the time Wife purchased it, at the time of the marriage, or at the time of the de facto end date of the marriage. Husband also told the court that Wife incorrectly testified that she borrowed $25,000 from the HELOC and immediately paid it off, as counsel for Husband received documentation showing that the HELOC was not fully paid until four months after the trial before the magistrate.

**{¶15}** Wife argued that Husband was incorrect, that her testimony was truthful regarding the borrowing against and immediate repayment in full of the HELOC, refuted that there was ever a $73,000 balance on the HELOC, and that she had the records to provide to the court if necessary. Wife asserted that the $25,000 that Husband referred to was taken out of the primary mortgage on December 11, 2017, then repaid the next day. Wife added that no funds from the HELOC were used to make improvements to the home, and that no major improvements had been made. Upon the court's request, Wife provided the court with the financial documents she referenced during argument.

**{¶16}** In support of his estimate of the value of the home, at trial, Husband submitted copies of the first and second mortgages, the HELOC, and satisfaction of mortgage for the original mortgage. Wife argued that the home cited by husband to support his $800,000 valuation was not a comparable property. Wife asserted that the home cited by Husband was a renovated five-unit multifamily home that was larger than the Floral home and had been gutted and completely renovated.

**{¶17}** As to the escrow payments, Husband argued that, while the funds "may be part of the Sale Agreement," they were not earned until after the end of the marriage and were paid only because of Husband's employment with Buildout. Wife responded that the Purchase Agreement did not tie the payout of the escrow accounts to his future employment with Buildout. Wife noted that Husband never signed the employment agreement, which he contended conditioned payment of the escrow funds on his employment, and explained that, despite his employment terminating before the three-year period provided in the employment agreement, he still received his entire portion of the escrow payments.

### 5. *The Domestic Relations Court's Judgment*

**{¶18}** The court sustained Husband's objection regarding having his name removed from the mortgage. However, it overruled Husband's objections as to the magistrate's decision to award Wife the Floral home and disburse a portion of the escrow payments to Wife. The court found that the magistrate correctly found that Husband was entitled to half of the mortgage paydown based on her finding that the increased value in the Floral home was passive. The court found that neither the 2016 mortgage nor the 2017 HELOC affected Wife's separate interest in the residence, and that Husband failed to offer persuasive testimony to support his assertion that he made improvements on the home that increased its value and to what extent.

**{¶19}** As to the escrow payments, the domestic relations court found that Husband failed to offer "sufficient persuasive evidence" to show that receiving the payout of the escrow accounts was conditioned on Husband's employment with Buildout after the marriage had ended.

### 6. *The Final Decree of Divorce*

**{¶20}** The court found that the residence was Wife's separate property, and

Husband was entitled only to reimbursement for the monies he paid toward the mortgage during the marriage. Wife was awarded the Floral home and ordered to pay Husband $48,780, which represented his one-half interest in the mortgage paydown from the date of the marriage to the date of the separation. The court ordered this payment to be applied toward the amount that Husband owed Wife in the equalization payment as outlined in the decree.

{¶21} The court determined that there was insufficient testimony to determine whether the Adjustment Escrow and the Indemnity Escrow were separate funds from Husband's initial sale of his interest, or that the payments were dependent on Husband's continued employment with Buildout. The court found that both escrow payments were part of the initial sale, and therefore, constituted marital property subject to division. The court ordered the escrow payments to be divided equally between Husband and Wife.

{¶22} This appeal followed.

## II. Analysis

### A. First Assignment of Error: Proceeds as Marital Property

{¶23} In Husband's first assignment of error, he asserts that the domestic relations court erred as a matter of law by ordering that the proceeds from Husband's sale of his interest in Oval Room were marital property subject to division.

#### 1. Standard of Review

{¶24} In divorce proceedings, the domestic relations court is required to divide marital property equitably between spouses. R.C. 3105.171(B). "There is a presumption in Ohio that an asset acquired during the course of the marriage is marital property, unless proved otherwise." *Bass v. Bass*, 2022-Ohio-2970, ¶ 21 (2d Dist.), quoting *Tincher v. Tincher*, 2020-Ohio-3352, ¶ 63 (5th Dist.); R.C. 3105.171.

9

The burden of proving that an asset is separate property lies with the party asserting such a claim. *Shteiwi v. Abdelmassih*, 2025-Ohio-2901, ¶ 29 (1st Dist.). "A domestic relations court is vested with broad discretion to determine what constitutes an equitable division of property in a divorce proceeding, and its exercise of discretion will not be disturbed on appeal in the absence of some demonstration that the court abused its discretion." *Bass* at ¶ 22, quoting *Jelen v. Jelen*, 86 Ohio App.3d 199, 203 (1st Dist. 1993), citing *Martin v. Martin*, 18 Ohio St.3d 292 (1985).

{¶25} We, therefore, review the domestic relations court's equitable division of property for an abuse of discretion. *Shteiwi* at ¶ 26. "In determining whether the trial court abused its discretion, a reviewing court cannot examine the valuation and division of a particular marital asset or liability in isolation; rather, the reviewing court must view the property division in its entirety, consider the totality of the circumstances, and determine whether the property division reflects an unreasonable, arbitrary or unconscionable attitude on the part of the trial court." *Bass* at ¶ 22, quoting *Jelen* at 203, citing *Briganti v. Briganti*, 9 Ohio St.3d 220 (1984).

{¶26} However, when the characterization or valuation of property is in question, we review for the sufficiency or manifest weight of the evidence, depending on the challenge raised by the party taking issue with the classification. *Shteiwi* at ¶ 26.

2. *Proceeds from the Sale of Husband's Interest in Oval Room*

{¶27} Husband asserts that he only needed to prove by the preponderance of the evidence that the Adjustment Escrow and Indemnity Escrow monies were his separate property because he earned the payouts by working for Buildout after the de

facto end date of the marriage.[2] We therefore review the manifest weight of the evidence. *See Carter v. Carter*, 2024-Ohio-1046, ¶ 19 (1st Dist.) (weight-of-the-evidence standard applied where appellant challenged the trial court's determination that a car was marital property, arguing that it was acquired during the marriage in appellee's name but for the benefit of his adult daughter). In reviewing a manifest-weight-of-the-evidence challenge, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and, in resolving conflicts in the evidence, determine whether the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *McKenna v. McKenna*, 2019-Ohio-3807, ¶ 10 (1st Dist.).

**{¶28}** Husband argues that he had to become a Buildout employee to receive the escrow payouts, and that the escrow payouts were his separate property because his labor entitling him to receipt of the payouts occurred after the end of the marriage.

**{¶29}** This court addressed the difference between separate and marital property in *Mullins v. Mullins*, 2023-Ohio-3266 (1st Dist.):

> The parties' marital property consists of real or personal property owned by either spouse, including retirement benefits acquired during the marriage and interest in those benefits. Marital property does not include any separate property. Separate property consists of, among other things, *property acquired before the marriage* and certain other property, such as inheritances and gifts, acquired by one spouse during

---

[2] Husband also argues that the court failed to equally divide the taxes on the monies earned from the sale of Oval Room, but that argument was not raised in Husband's objections, waiving all but plain error. Civ.R. 53(D)(3)(b)(iv) ("Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion . . . unless the party has objected to that finding or conclusion."). Husband does not make a plain-error argument on appeal. This court, therefore, declines to address this issue.

the marriage. A spouse may retain separate property despite having commingled it with marital property, because as long as it is traceable, separate property retains its identity.

(Emphasis added.) (Internal quotation marks and citations omitted.) *Shteiwi*, 2025-Ohio-2901, at ¶ 27 (1st Dist.), citing *Mullins* at ¶ 14, quoting *Devito v. Devito*, 2022-Ohio-2563, ¶ 23 (1st Dist.). The "key issue" in determining whether property is separate or marital is the traceability of the commingled asset. *Shteiwi* at ¶ 29, citing *Tyra v. Tyra*, 2022-Ohio-2504, ¶ 15 (1st Dist.). The party disputing the marital classification of property bears the burden of demonstrating by a preponderance of the evidence that the asset in question is separate property. *Id.*

**{¶30}** Husband asserts that the domestic relations court should have determined whether the earnings were a marital asset based on the date he received the payout from the sale of his interest in the business, rather than on the date the sale of the business closed. Therefore, at trial, Husband bore the burden to demonstrate by the preponderance of the evidence that the escrow payments constituted separate property.

**{¶31}** The authority cited by Husband does not support his argument that the escrowed amounts were not marital property.[3] Specifically, nothing in the record supports Husband's assertion that the escrow payouts were conditioned on him

---

[3] Husband only cites to *Kumolu v. Kumolu*, 2025-Ohio-1669 (10th Dist.), regarding the validity of stipulations of the commencement and end date of a marriage, *State v. Stumpf*, 32 Ohio St. 95, 102 (1987), regarding the definition of "preponderance of the evidence," and *Harris v. Harris*, 2003-Ohio-5350 (11th Dist.), for the significance of the duration of a marriage as it pertains to distinguishing marital assets subject to division from nonmarital assets. *Harris* is only applicable to this matter regarding a trial court's use of a de facto termination of a marriage; however, this case is distinguishable in that regard as the parties in the instant matter stipulated to the beginning and end dates of the marriage.

becoming a Buildout employee.[4] Husband points to paragraph three of the employment agreement. That paragraph, however, only discusses Husband's $175,000 salary, the $75,000 to $175,000 in annual bonuses that Husband would earn based on Oval Room's revenue, and the benefits package; it is silent as to the escrowed monies. Likewise, Husband cites to the section governing discoveries and inventions, confidentiality, and noncompete clauses, which do not support Husband's position, as there is no mention of the escrowed monies. The Buildout employment agreement is silent regarding the Adjustment and Indemnification Escrow Accounts.

**{¶32}** The Purchase Agreement reflects only the total Buildout paid for its purchase of Oval Room, and the amounts held in escrow to account for certain offsets and any adjustments needed to the final cost of the sale to Buildout. The Purchase Agreement does not state that the payout of the escrowed sums was contingent on Husband's employment with Buildout for any set period.

**{¶33}** In his reply brief, Husband cites the definitions and sections 2.5 and 3.2(I) of the Purchase Agreement in support of his argument. The earnout statement, which broke down the payment terms of the sale, referred to in section 2.5, was to assist with determining the revenue for Oval Room for the earnout period. Husband asserts that the definitions of "Escrow Amount" and "Escrow Release Date" support his contention that the escrow amounts would not have been released unless Husband worked for Buildout. The definitions that Husband points to refer to section 2.5, which explains the deadline for the earnout statement, the period to object to the earnout statement, and other considerations that had to be made prior to the payout of the

---

[4] Husband's termination from Buildout 18 months after he began employment could further confirm that his receipt of the escrow payouts was not contingent on Husband's employment with Buildout.

escrow funds. Section 2.5 did not require that Husband remain employed with Buildout for any set period to receive the escrow payments.

{¶34} Husband also asserts that section 3.2(I) made his employment agreement part of the Purchase Agreement because it required both parties to deliver a signed copy of the employment agreement. However, this is simply not reflected in that section of the Purchase Agreement.

{¶35} Thus, the language in the Purchase Agreement does not support Husband's contention that the receipt of the escrowed amounts was tied to his employment with Buildout. Instead, while the terms of the Purchase Agreement established the criteria for determining the amount of the eventual payout of the escrowed amounts, nothing in the Agreement ties that payout to Husband's post-marital employment with Buildout.

### 3. *The Adjustment Escrow*

{¶36} According to the Purchase Agreement, the purpose of the Adjustment Escrow was to cover any differences in the estimated versus actual value of certain categories of Oval Room's assets and liabilities, namely working capital, cash on hand, closing debt, selling expenses, bonus amounts, and taxes payable.

{¶37} Under the Purchase Agreement, one day prior to closing, the sellers were required to provide Buildout with an Estimated Closing Statement that calculated the total amounts expected for the categories of assets and liabilities that would be used to determine the amount of the payout from the Adjustment Escrow. Then, within 120 days after closing on the sale, Buildout was required to deliver a certified statement setting forth the actual amounts of these categories. The Parties would then calculate the Final Purchase Price and determine whether it was higher or lower than the Initial Purchase Price. If the Initial Purchase Price was higher than the

Final Purchase Price, then the excess was to be paid to Buildout from the Adjustment Escrow Amount. Any remaining amount in the Adjustment Escrow Amount would be returned to GreenLight.

**{¶38}** On December 28, 2022, pursuant to the Purchase Agreement, the sellers provided an Estimated Closing Statement to Buildout. Then, within 120 days after closing, Buildout delivered a certified statement of the actual amounts. The parties eventually agreed that Buildout was owed $78,884 out of the Adjustment Escrow. This amount was deducted from the $250,000 escrow amount, which left $171,116 remaining. The remaining $171,116 was then paid to GreenLight.

**{¶39}** R.C. 3105.71(A)(3)(a) provides that marital property includes property currently owned and all interest acquired by either or both spouses during the marriage. The fact that the funds were escrowed does not change the character of the funds because the record established that they were earned during the marriage. There is no dispute that Husband held an interest in the Adjustment and Indemnity Escrows, and that the funds were taken from proceeds of the sale of Husband's interest in Oval Room. It is also undisputed that the proceeds of the sale were a marital asset. It then follows that the escrowed funds were a marital asset, as nothing in the purchase or employment agreements made the payouts of the funds conditioned upon Husband's future employment with Buildout. This is competent, credible evidence to show that the escrowed funds were earned during the marriage. Accordingly, we overrule appellant's first assignment of error.

### B. Second Assignment of Error

**{¶40}** In his second assignment of error, Husband argues that the domestic relations court erred as a matter of law by failing to order the sale of the real property to obtain the highest and best price for the property.

1. *Standard of Review*

**{¶41}** Husband does not challenge the classification of the Floral home as a mixed asset. Therefore, there is no need to conduct a manifest-weight analysis. Instead, Husband asserts that the domestic relations court should have ordered that the property be sold to maximize the distribution between the parties. Husband's challenge is with respect to the court's decision in dividing the property, which we review for an abuse of discretion. *Stapleton v. Stapleton*, 2022-Ohio-3018, ¶ 27 (1st Dist.). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*

2. *The Court Did Not Err in Its Order Concerning the Floral Home*

**{¶42}** The evidence before the domestic relations court was undisputed that Wife purchased the property before the date of the marriage. The property was commingled with marital funds because the parties paid down the existing mortgages during the marriage. *See Ruff v. Ruff*, 2023-Ohio-2349, ¶ 37 (11th Dist.). To demonstrate which portion of the home's value remained separate property, Wife was required to show that the appreciation in the home's value was passive. To determine whether the appreciation in value was active or passive, the domestic relations court had to determine whether it resulted from efforts by either spouse (active) or from market forces (passive).

**{¶43}** The Ohio Supreme Court has held that R.C. 3105.171(A)(3)(a)(iii) "unambiguously mandates that when either spouse makes a labor, money, or an in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." *Bozhenov v. Pivovarova*, 2023-Ohio-2437, ¶ 14 (12th Dist.), quoting *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 400 (1998); *see Gerber v. Gerber*, 2006-Ohio-1384, ¶ 12 (8th Dist.) (an increase in value

due to repairs or improvements performed by either spouse during the marriage or by payment on the mortgage principal with marital funds is marital property); *Shteiwi*, 2025-Ohio-2901, at ¶ 28 (1st Dist.) (How property appreciates is material to its equitable division; "active appreciation" is due to the labor, monetary, or in-kind contributions of either or both spouses that occurred during the marriage.). If, however, the appreciation of the separate property is attributable to conditions outside the parties' control, such as inflation, the property's location, or market-driven factors, the increase in value is passive appreciation and remains separate property. *Bozhenov* at ¶ 12-13; *Shteiwi* at ¶ 28 ("passive appreciation" is attributable to a property's location or market inflation and not to efforts expended by a marital party); R.C. 3105.171(A)(6)(a)(iii) and 3105.171(A)(6)(a)(ii).

{¶44} Wife made a down payment on the home before the marriage. The down payment was therefore paid with nonmarital funds. The original mortgage was paid off in May 2016, and the court determined Wife's separate interest was traceable despite the 2016 mortgage and the 2017 HELOC. The Floral home, therefore, was Wife's separate property as she purchased it before the marriage, and it was properly disbursed to her. *See Bozhenov* at ¶ 12-13.

{¶45} While Husband asserts that the best method for disbursing the value of the Floral home was to order it sold on the open market, he provided no authority to support this proposition. Husband raises the domestic relations court's consideration of the appraiser's testimony, arguing that it was unreliable as the valuation of the Floral home was done 18 months before the trial on the divorce commenced. First, Husband failed to support his challenge by providing his own appraisal at trial. Second, while Husband frames his argument around an invalid or unreliable appraisal, his argument concerns the domestic relations court's award of the marital

home to Wife and the order requiring Wife to pay Husband half the mortgage paydown. Because the court determined that the appreciation in the home was passive, it correctly concluded that the home's value was irrelevant.

**{¶46}** Additionally, while Husband contends in his reply brief that the HELOC "caused indebtedness on the property to equal the existing mortgage taken out by Wife," nothing in the record shows that this line of credit carried a balance over the course of the marriage or had a balance at the end of the marriage.

**{¶47}** Where marital funds are used to pay the mortgage, a spouse is entitled to an equitable distribution of any mortgage reduction simply by virtue of being married. *Beyer v. Beyer*, 2024-Ohio-1278, ¶ 41 (8th Dist.); *see Goebel v. Werling*, 1999 Ohio App. LEXIS 3443, *3 (9th Dist. July 28, 1999) ("The reduction in a mortgage during a marriage is equivalent to a marital investment and is considered part of the marital equity.").

**{¶48}** Since, here, the mortgage was paid during the marriage using marital funds, the domestic relations court had to determine the amount of the paydown based on the reduction in the mortgage balance rather than on the house's fair market value. *See Bozhenov,* 2023-Ohio-2437, at ¶ 21 (12th Dist.) (the court agreed with husband, who had purchased the home before the marriage, that wife's equity interest should be based on the reduction in the mortgage balance during the marriage instead of the fair market value, where there was no evidence of the value of the home at the time of the marriage). To determine the amount of the paydown, the court had to subtract the mortgage balance as of the date of the marriage, $224,911, from the mortgage balance of $127,351 at the end of the marriage. *See id.* at ¶ 19-21. That calculates a $97,560 paydown during the marriage.

**{¶49}** As there is no evidence in the record to show that the appreciation in the

18

value of the Floral home was due to anything other than market forces, the appreciation in the value of the home was passive, and that appreciated value of the home remained Wife's separate property. Because the parties used marital funds to make mortgage payments, Husband was entitled only to his half of the paydown on the mortgage.

**{¶50}** Accordingly, the domestic relations court's property division with respect to the Floral home was not an abuse of discretion and Husband's second assignment of error is overruled.

### III. Conclusion

**{¶51}** The domestic relations court's division of the escrow payments was not contrary to the weight of the evidence, where the sale of the business took place prior to the end of the marriage and Husband failed to prove that receipt of the escrowed funds from that sale was conditioned upon his post-marriage employment with the buyer. The court also did not abuse its discretion in determining that the home was a separate marital asset belonging to Wife, the appreciation in the value of the home was passive and therefore also separate property, and that Husband was only entitled to his portion of the mortgage pay down that occurred during the marriage. Accordingly, the domestic relations court's judgment is affirmed.

Judgment affirmed.

**CROUSE, P.J.,** and **NESTOR, J.,** concur.